# Richmond

PERRY LEE COMPTON, JR. v. COMMONWEALTH OF VIRGINIA.

October 10, 1949.

Record No. 3589.

Present, Gregory, Eggleston, Spratley, Buchanan, Staples and Miller, JJ.

The opinion states the case.

*Charles Pickett, Harry A. Shockey* and *James Keith*, for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General*, and *Henry T. Wickham, Assistant Attorney General*, for the Commonwealth.

BUCHANAN, J., delivered the opinion of the court.

A grand jury of Fairfax county returned an indictment against the defendant, Perry Lee Compton, Jr., charging that he did, in the night, "enter, without breaking, a certain chicken house, the same being an outhouse belonging to Kirby Day, the said chicken house not then and there being a dwelling house (but then and there being an outhouse adjoining the dwelling house of the said Kirby Day)," with intent to steal, and that he stole four chickens therefrom of the value of $5.

The Commonwealth was required to file a bill of particulars "showing specifically the statute and the particular portion thereof, relied upon for a conviction." It accordingly filed a bill of particulars stating it relied on sections 4438 and 4439 of the Code, 1942 (Michie), which were quoted in full, and the particular portions relied on were italicized, as follows:

Section 4438: *"If any person in the night enter without breaking* or in the daytime break and enter *a dwelling house or an outhouse adjoining thereto and occupied therewith,"* etc. (continuing to define the crime of breaking and entering, or entering without breaking, other houses with intent to commit murder, etc., and prescribing the punishment therefor).

Section 4439: *"If any person do any of the acts mentioned in the preceding section, with intent to commit larceny, or any felony other than murder, rape or robbery, he shall be confined in the penitentiary not less than one year nor more than ten years, or, in the discretion of the jury, confined in jail not exceeding twelve months, and fined not exceeding five hundred dollars."* * * *

The evidence was that on the night of June 26, 1948, about ten o'clock, the defendant told his two boys, one fourteen and the other twelve years old, to get a couple of bags, that they were going down to get some chickens. They left home in defendant's car, stopped on the way to get some gas, then drove on to the home of Kirby Day. There they got out of the car and the older boy stood at an outhouse

while his father went down to the chicken house. He came back and told his boy to come on, and together they went back to the chicken house. There the defendant reached inside the chicken house, got four chickens, put them in a bag and handed the bag to his son. About that time Day came out and there was shooting, in which defendant shot Day and Day shot the defendant. Officers arrived about midnight, found both men wounded and sent them to a hospital. The defendant told the officers his name was Davis and that he had come there with a man he did not know to steal some chickens.

The defense was that the defendant was too drunk to know what he was doing. This the jury did not believe, but found him guilty of housebreaking and fixed his punishment at eight years in the penitentiary. He was sentenced accordingly.

The defendant contends that the judgment of conviction should be reversed on the ground that the evidence did not prove him guilty of the offense for which he was convicted, and because he did not have a fair trial. He argues that the indictment and the bill of particulars charged that the chicken house which he entered was an outhouse adjoining the dwelling house of Kirby Day; that it did not in fact adjoin the dwelling house, and that the defendant was guilty of nothing more than a misdemeanor in stealing the chickens.

The theory of the Commonwealth was that the defendant was guilty of entering in the night, without breaking, an outhouse adjoining the dwelling house of Kirby Day, and therefore guilty of the offense denounced in the first part of section 4438, of entering "a dwelling house or an outhouse adjoining thereto and occupied therewith." It is to be noted that the indictment expressly negatived that the outhouse was a dwelling house, and did not charge that it was occupied therewith.

Section 4437 of the Code, 1942 (Michie), defines burglary as breaking and entering the dwelling house of

another in the nighttime with intent to commit a felony or larceny (grand or petit). At common law burglary was a breaking and entering in the nighttime with intent to commit a felony. Minor, *Synopsis of the Law of Crimes and Punishments,* p. 91; *Wharton's Criminal Law,* vol. 2, 12 ed., sec. 968, p. 1271; 12 C. J. S., Burglary, sec. 1, p. 664.

Also, at common law, not a dwelling house alone was the subject of burglary, but also "the outhouses, if *parcel of the dwelling (i. e.,* occupied with it) and within the *curtilage,* or, if there be no curtilage, *under the same roof* with the dwelling, and *closely adjoining; but not* an outhouse in the occupancy of *another person, e. g.,* as a workshop, although within the *curtilage,* &c., nor in Virginia, unless some person *usually* lodge therein at night." Minor's Synopsis, *supra,* pp. 92-3. Wharton's Criminal Law, *supra,* sec. 997, p. 1290; 9 Am. Jur., Burglary, sec. 20, p. 250.

Mr. Minor cites section 3696 of the Code of 1887 as authority for his statement that in Virginia a dwelling house does not include an outhouse "unless some person *usually* lodge therein at night." That section was made section 4429 of the Code of 1919 (Michie, 1942), and is as follows:

"No outhouse, not adjoining a dwelling house, nor under the same roof (although within the curtilage thereof), shall be deemed parcel of such dwelling house, within the meaning of this chapter, unless some person usually lodge therein at night."

Sections 4438 and 4439, the housebreaking statutes, are in the same chapter (ch. 179) of the Code of 1919 as the quoted section 4429. The three sections were in the same chapter of the Code of 1887 (ch. 181), and were also grouped together in the same chapter of the Act of 1848, codifying the criminal statutes of the State (Acts, 1847-8, ch. 120, p. 93). Sections 4438 and 4439 are, therefore, both limited by section 4429.

The chicken house into which the defendant entered was at least 75 feet from Day's dwelling house and no person usually lodged therein at night. It was, therefore, not a

parcel of the dwelling house, and not within the terms of the first part of section 4438.

As noted, the indictment did not in fact charge a violation of the first part of section 4438. It did, however, charge the entering of a chicken house with intent to commit larceny. The further description of the chicken house as "being an outhouse adjoining the dwelling house of the said Kirby Day," may be rejected as surplusage, leaving the indictment a valid charge of entering the chicken house. *Page* v. *Commonwealth*, 26 Gratt. (67 Va.) 943, 949.

The second part of section 4438 forbids the entering of, among other things, "any office, shop, storehouse, warehouse, banking house, or other house." The bill of particulars gave notice that the Commonwealth relied on the provisions of section 4439, to the effect that if any person did any of the acts mentioned in section 4438, with intent to commit larceny, he should be punished as prescribed. The chicken house involved was estimated by one of the officers to be 15 x 20 feet in size. Day had testified on a previous hearing that it was a small building, something like 4 x 4 feet, of 5 x 5 feet, but tall enough to stand up in. A photograph of it, introduced in evidence, showed it to have walls and a roof. It was such a structure as is included in the words of the statute "or other house." It has been frequently so held by other courts in construing similar statutes. *Gunter* v. *State*, 79 Ark. 472, 96 S. W. 181; *Gillock* v. *People*, 171 Ill. 307, 49 N. E. 712; *Williams* v. *State*, 105 Ga. 814, 32 S. E. 129; *Price* v. *Commonwealth*, 15 Ky. L. Rep. 837, 25 S. W. 1062; *People* v. *Coffee*, 52 Cal. App. 118, 198 P. 213; *People* v. *Franco*, 79 Cal. App. 682, 250 P. 698; 12 C. J. S., Burglary, sec. 16, p. 678; 9 Am. Jur., Burglary, sec. 22, p. 252. *Cf. McDorman* v. *Smyth*, 187 Va. 522, 47 S. E. (2d) 441; *Benton* v. *Commonwealth*, 91 Va. 782, 21 S. E. 495.

While the indictment thus charged and the evidence tended to show only the entering of a chicken house, not a parcel of the dwelling house, the defendant was in fact prosecuted as for entering a part of the dwelling. The rul-

ings on evidence and the instructions given emphasized that as being the offense. Although the jury were instructed that the Commonwealth must prove that the chicken house was an outhouse adjoining the dwelling house and occupied therewith, yet the defendant was not allowed to show that it did not adjoin and was not part of the dwelling.

Burglary was, at common law, primarily an offense against the security of the habitation, and that is still the general conception of it. A difference is recognized between the crime of wrongfully entering in the night a house where people live and the crime of entering a house where chickens roost. While both are punishable under the same statute, the punishments provided take a wide range. The defendant was entitled to have the jury know the true nature of the offense charged against him. His trial on the theory that the chicken house he entered was the same thing as a dwelling was not a fair trial.

The defendant complains also that the Commonwealth was allowed to prove that he shot Day, for which offense he had already been tried and convicted. This shooting occurred while the act of housebreaking was yet in progress and was so inseparably connected with it as to make the avoidance of all reference to it practically impossible. Witnesses undertaking to testify about the housebreaking voluntarily referred to the shooting. On cross-examination defendant's counsel developed by the defendant's son that Day shot his father and broke his leg. The shooting was part of the *res gestae* and limited reference to it was admissible. It was part of the incident under investigation. *Boyd* v. *Commonwealth*, 156 Va. 934, 944, 157 S. E. 546, 549-50; 20 Am. Jur., Evidence, sec. 311, pp. 290-91; Anno., 170 A. L. R. at p. 306. However, the defendant should not be tried again for the shooting; details should be omitted and the evidence should be confined to such reference only as is reasonably necessary to an intelligent investigation of the charge being tried. The court should, as it did on this trial, caution the jury against further punishment of the defendant because of the shooting.

■ In his effort to prove that he was drunk, defendant called as a witness Flossie Eleanor Pearson. On cross-examination she was asked whether she was married. On replying that she was not, she then was asked, over objection, how many children she had, and replied that she had three. Later she was recalled by the court and asked whether the defendant was the father of her children. She answered that he was not. In his brief the defendant says he does not make this incident a basis for formal assignment of error, but cites it in support of his claim that he did not have a fair trial. The questions were irrelevant and prejudicial and should not have been asked. *Cf. Taylor* v. *Commonwealth*, 180 Va. 413, 23 S. E. (2d) 139.

■ Defendant asserts that the trial judge evinced hostility that prejudiced his case. Defendant's counsel endeavored on cross-examination to have certain of the Commonwealth's witnesses say that the chicken house did not adjoin the dwelling house. The court insisted that counsel first explain to the witness what he meant by adjoining, saying it had a technical meaning. The ensuing controversy terminated in a threat of contempt proceedings. The defendant is apt to be the sufferer from such occurrences. Rulings made in words or manner indicating antagonism or resentment toward counsel may convey the impression that the feeling includes also counsel's client. Both court and counsel should not forget that the object sought is a fair trial conducted with dignity and in keeping with our high traditions of justice. All that endangers that result should be avoided.

■ Finally, the defendant says that the special prosecutor made an inflammatory argument to the jury. Some of his argument seems to merit that appellation. It included such remarks as these:

"He has no right to the freedom of this country. He has no right to the benefit of our laws. He has no right to go around associating with decent society. He has no right to exert his influence on children, and particularly his own children." "There are other children in that house. What

is going to happen to them if that man is allowed to run around loose?"

The defendant failed to object to this argument when made and did not ask for a mistrial. He cannot now rely upon it as reversible error. *Wilson* v. *Commonwealth*, 157 Va. 962, 970, 162 S. E. 15. It was, however, improper argument. Attorneys for the Commonwealth "should always remember whose commission they bear and should scrupulously respect the rights of the accused." *Martin* v. *Commonwealth*, 143 Va. 479, 485, 129 S. E. 348, 350. *Mohler* v. *Commonwealth*, 132 Va. 713, 731, 111 S. E. 454, 460; *Bateman* v. *Commonwealth*, 183 Va. 253, 256, 32 S. E. (2d) 134, 136. Special prosecutors should observe the same restraint. The practice followed in some jurisdictions of requiring, unless there is some valid reason against it, that the closing argument in a criminal case be made by the Commonwealth's attorney, has much to commend it.

The judgment below is reversed and the defendant is granted a new trial.

*Reversed and remanded.*