COURT OF APPEALS OF VIRGINIA


Present:    Judges Frank, Beales and Powell
Argued at Richmond, Virginia


LAFERNE YVETTE WILLIAMS

MEMORANDUM OPINION[*] BY

v.       Record No. 1380-09-2                         JUDGE ROBERT P. FRANK
                                                                       OCTOBER 19, 2010

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Theodore J. Markow, Judge[1]

Catherine French, Supervising Assistant Public Defender (Office of
the Public Defender, on briefs), for appellant.

Alice T. Armstrong, Assistant Attorney General II (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


        Laferne Yvette Williams, appellant, was convicted, by a jury, of second-degree murder,

in violation of Code § 18.2-32.  On appeal, she contends the trial court erred in not striking Juror

B for cause because of Juror B's knowledge of the case and in not disqualifying the entire

Richmond Commonwealth's Attorney's Office from prosecuting her case.  For the reasons

stated, we affirm the judgment of the trial court.

BACKGROUND

        A grand jury indicted appellant on a charge of first-degree murder.  Prior to her jury trial,

appellant filed a motion to disqualify the entire Commonwealth's Attorney's Office, contending

that one of the assistant Commonwealth's attorneys had a conflict of interest.

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] The Honorable Clarence N. Jenkins, Jr. ruled on appellant's motion to disqualify the
Richmond Commonwealth's Attorney's Office.

The trial court conducted a hearing on the disqualification motion on November 10, 2008. Appellant proffered that Julie McConnell, an assistant prosecutor currently employed in the office of the Richmond Commonwealth's Attorney, represented appellant on a malicious wounding charge in August 2001 when Ms. McConnell was employed as an assistant with the Richmond Public Defender's Office. Ms. McConnell recalled representing appellant. Appellant alleged Ms. McConnell gained privileged information in that representation and concluded she had a conflict of interest. Since McConnell currently works with Jennifer Sublett (the prosecutor in the instant case) in the Richmond Juvenile and Domestic Relations District Court, appellant asked the trial court to disqualify the entire Commonwealth's Attorney's Office from prosecuting her case and to bar Ms. McConnell from divulging any information garnered from her prior representation.

The Commonwealth responded that Jennifer Sublett was assigned to prosecute appellant within two days of appellant's arrest. Ms. Sublett was immediately advised of Ms. McConnell's previous representation. The Commonwealth indicated that Ms. McConnell had not discussed appellant or her case with Ms. Sublett or any member of her office. The Commonwealth denied Ms. McConnell had any personal interest in the instant case and stated that Ms. McConnell voluntarily excluded herself from any involvement in the case.

It should be noted that neither appellant's motion nor the statement of facts contains any allegations of specific conduct that indicated a conflict of interest. Other than bare allegations of conflict of interest and that Ms. McConnell obtained privileged information from the prior representation, no facts were adduced at the November 10 hearing to support these allegations.

The trial court, in denying appellant's motion for disqualification, opined:

> [T]he Court is going to deny the plaintiff's motion to disqualify the
> Commonwealth Attorney's Office based upon there being an
> alleged conflict with the Assistant Commonwealth's Attorney,
> Julie McConnell. Reasons stated for that is that in your motion,

Mr. Patel, and along with Ms. Parsons, I think you all cited the similarity of the prior charges and these charges. The Court finds that that reason alone is not sufficient, especially when the prior representations are in no way related to the allegations that Ms. McConnell would have any personal prejudice in this case or any evidence that she obtained privileged information that would prejudice the defendant in this case.

Prior to *voir dire* of the jury, the trial court advised the venire that appellant was charged with murdering James Foust the evening of June 13, 2008, at 2801 Montrose Avenue, Apartment D. During *voir dire*, the assistant Commonwealth's attorney advised the panel that this case concerned domestic violence involving a stabbing. Also during *voir dire*, the trial court inquired if any juror heard of this case or knew of any facts of the case. No juror responded affirmatively. Nor did any venire member respond positively when asked if they had any interest in the outcome of the case, or expressed or formed any opinion, bias or prejudice involving the case.

Upon specific questioning from defense counsel, Juror B indicated she is an ex-police officer and currently is an assistant to the Assistant Chief of Police. She stated that she receives daily printouts of high profile or serious crimes, but she didn't "recall discussing this particular case." While she heard of the instant case, she had no specific recollection of the report she read. Juror B stated her reading the report would not affect her ability to be fair and impartial and she would be able to decide this case solely on the evidence produced at trial.

The following dialogue occurred between Juror B and defense counsel:

JUROR: What happens during the day, we get high profile cases on our computers, and that's how I was able to know about this particular murder had taken place, but I didn't read anything other than it had happened the night before.

MS. PARSON: Is it possible that during the trial some – that some detail may bring out your memory about what you saw in that report more than –

JUROR: Like I said, the only – I did not go into detail with the report. I just read that an incident had occurred and the date and

the address that it had occurred. I did not read any of the details of it.

MS. PARSON: But details or facts of the case were on the screen?

JUROR: The only thing we usually get, it's called a noteworthy report, and those are major crimes that occurred the night before. Like when I get to work today, I get to pull up the screen. I get that every day of what major crimes occurred over the weekend. So I just scroll through and read what happened – what occurred over the weekend, and that's how I'm able to read that.

MS. PARSON: Does it give any details?

JUROR: Not major details. I know what you are asking. Some of the cases, they do have the victim's names, and if there's an arrest made, sometimes the arresting party's name is mentioned, but I – like I said, I do not remember the victim's names from way back then –

   \*  \*  \*  \*  \*  \*  \*

MS. PARSON: Do you feel that you'll be able to give Ms. Williams a fair hearing today just based on the evidence here and not based off of your working with any of the officers you know?

JUROR: I think so, yes.

Appellant then moved to strike Juror B for cause based on Juror B's prior knowledge of the offense and the possibility that during the trial she might recollect additional facts. The trial court denied the motion, and appellant exercised a peremptory strike to remove her.

This appeal follows.

## ANALYSIS

### I. Disqualification

Appellant contends the trial court erred in not disqualifying the entire Commonwealth Attorney's Office from prosecuting her case. It is uncontroverted that Assistant Commonwealth's Attorney Julie McConnell represented appellant seven years earlier in a maiming charge. Appellant alleged that through this prior representation, Ms. McConnell gained

- 4 -

privileged information that created a conflict of interest. Importantly, appellant offered no evidence to support this allegation.

The due process rights of a criminal defendant under both the Virginia and United States Constitutions are violated when a Commonwealth's attorney who has a conflict of interest relevant to the defendant's case prosecutes the defendant. Cantrell v. Commonwealth, 229 Va. 387, 394, 329 S.E.2d 22, 26-27 (1985). However, the question whether there is a conflict of interest depends upon the circumstances of the individual case, and the burden is on the party seeking disqualification of the prosecutor to present evidence establishing the existence of disqualifying bias or prejudice. Powell v. Commonwealth, 267 Va. 107, 138, 590 S.E.2d 537, 556 (2004). "The determination whether the evidence supports a finding of a conflict of interest is a matter committed to the sound discretion of the trial court." Id.

The issue may arise where the prosecutor has had an attorney-client relationship with the parties involved whereby he or she obtained privileged information that may be adverse to the defendant's interest in the pending criminal charges. Commonwealth v. Kilgore, 15 Va. App. 684, 694, 426 S.E.2d 837, 842 (1993). Another situation occurs when the prosecutor has some direct personal interest arising from a financial interest, kinship, or close friendship such that his or her objectivity and impartiality are called into question. Cantrell, 229 Va. at 391-94, 329 S.E.2d at 24-27. None of these circumstances applies to the present case.

This Court addressed disqualification of an individual Commonwealth's attorney and the entire office in Lux v. Commonwealth, 24 Va. App. 561, 484 S.E.2d 145 (1997). Lux was initially convicted of grand larceny while representing himself with the "assistance" of a public defender during trial. Id. at 566, 484 S.E.2d at 147. Lux received a suspended sentence. The same public defender was later hired as an assistant Commonwealth's attorney in the same

jurisdiction. Id. Subsequently, the Commonwealth moved the trial court to revoke Lux's previously suspended sentence. Id. at 566, 484 S.E.2d at 148.

The prosecutor's office purportedly established a screening procedure that prohibited the former public defender from participating in any of the proceedings against Lux, including the revocation of Lux's suspended sentence. Id. at 566, 484 S.E.2d at 147. While the revocation proceeding was pending, Lux filed a federal civil action against the Commonwealth's attorney alleging the Commonwealth's attorney, among others, conspired to maliciously prosecute him for a charge for which he was acquitted in the original trial. Id. at 566-67, 484 S.E.2d at 148.

While this civil action was pending and during the course of the revocation proceeding, Lux moved the trial court to disqualify the assistant Commonwealth's attorney because of a conflict of interest created by the former public defender previously representing him in the same offense that was subject to the pending revocation hearing. Id. at 567, 484 S.E.2d at 148. At the disqualification hearing, the Commonwealth asserted that they had implemented a screening procedure, yet offered no evidence proving the existence of such a process. Id. The trial court denied the motion and revoked the suspended sentence. Id.

On appeal, Lux raised two points of conflicts of interest: the pending civil suit and the prior representation of a current assistant Commonwealth's attorney. The latter is relevant to the instant case. We explained:

> Prosecuting attorneys have broad discretionary power over criminal defendants at several stages of the criminal process. Within limits, prosecutors decide whether or not to prosecute an individual, determine the exact charges for which an individual will be tried, and, if the individual is convicted, recommend the magnitude and nature of the individual's sentence. "There is no doubt that the breadth of discretion that our country's legal system vests in prosecuting attorneys carries with it the potential for individual and institutional abuse." Bordenkircher [v. Hayes], 434 U.S. [357,] 365 [(1978)].

- 6 -

> In order to protect prosecutorial impartiality, a trial court has the power to disqualify a Commonwealth's attorney from proceeding with a particular criminal prosecution if the trial court determines that the Commonwealth's attorney has an interest pertinent to a defendant's case that may conflict with the Commonwealth's attorney's official duties.

Id. at 568, 484 S.E.2d at 148 (other citations omitted).

In finding the trial court in Lux erred in not disqualifying the entire Commonwealth's Attorney's Office, we established a two-prong test to evaluate whether such disqualification is required: (1) the appellant "has the burden of proving that a member of the Commonwealth's Attorney's Office counseled him on a matter related to the pending criminal case"; and (2) if appellant satisfies the first prong, "a presumption arises that the employees of a Commonwealth's Attorney's Office share confidences with respect to matters handled by the office." Id. at 575, 484 S.E.2d at 152. When the presumption arises, the Commonwealth "must rebut this presumption by proving the defendant's former lawyer has been effectively screened from contact with the Commonwealth's attorneys working on the defendant's case." Id.

This two-prong test is premised on the earlier representation being "related" to the present prosecution. In Lux, the present revocation proceeding was for the exact offense in which the former public defender represented Lux. Unlike Lux, in the instant case the original maiming offense in which Ms. McConnell represented appellant was unrelated to the murder charge before the trial court. Not only is the current offense different from the one occurring seven years ago, but the victims are not the same.

Appellant argues that the Commonwealth produced no evidence that Ms. McConnell had been "effectively screened" from contact with other members of the Commonwealth's Attorney's Office. However, this argument is based on a flawed premise that the first prong of

the Lux analysis had been met, i.e., that Ms. McConnell had represented appellant "on a matter related to the pending criminal case." Id. Such is not the case, and the trial court so found.

Additionally, it is incumbent upon appellant to do more than make bare allegations of a conflict of interest. Appellant, who bears the burden of proving a conflict of interest, failed to offer any testimony, either through witnesses or proffer, that a conflict existed or that Ms. McConnell obtained privileged information that may have been adverse to appellant's interest. See Turner v. Commonwealth, 259 Va. 816, 819, 528 S.E.2d 112, 114 (2000) ("The burden of establishing an alleged conflict of interest . . . is upon the person who asserts such a conflict."). Although no evidence was taken, the Commonwealth submitted to the trial court that Ms. McConnell did not discuss her prior representation with anyone in the Commonwealth's Attorney's Office, nor did she participate in the prosecution of the instant case, nor did she have any personal interest in this case. Appellant never refuted this submission.

Appellant did not produce any evidence of misconduct, bias, or conflict of interest by the Commonwealth's Attorney's Office that interfered with appellant receiving a fair trial. See Frye v. Commonwealth, 231 Va. 370, 380, 345 S.E.2d 267, 275 (1986) (finding no conflict of interest and refusing to disqualify prosecutor who was former director of bank where victim's wife employed); cf. Cantrell, 229 Va. at 393, 329 S.E.2d at 26 (finding conflict of interest where victim's family hired a private attorney to institute a civil suit and court designated same attorney to act as a special prosecutor to assist the Commonwealth's attorney in Cantrell's criminal prosecution). Further, we cannot speculate what the possible conflict might be. See Brown v. Commonwealth, 28 Va. App. 315, 323, 504 S.E.2d 399, 403 (1998) (finding no conflict where appellant proffered no evidence of misconduct, bias or conflict).

Thus, because we find appellant did not meet her burden to prove a conflict of interest existed, we conclude the trial court did not abuse its discretion in not disqualifying the entire Commonwealth's Attorney's Office.

## II. Strike for Cause – Juror B

Appellant next contends the trial court erred in not striking Juror B for cause because she obtained information about this offense as an employee of the police department, thus preventing this juror from being "fair and impartial."

> "On appellate review, we give deference to the trial court's determination whether to exclude a prospective juror, because the trial court was able to see and hear each member of the venire respond to the questions posed. Thus, the trial court is in a superior position to determine whether a juror's responses during *voir dire* indicate that the juror would be prevented or impaired in performing the duties of a juror as required by the court's instructions and the juror's oath."

Thomas v. Commonwealth, 279 Va. 131, 164, 688 S.E.2d 220, 238 (2010) (quoting Lovitt v. Commonwealth, 260 Va. 497, 510, 537 S.E.2d 866, 875 (2000)). "Whether a juror is impartial is a pure question of historical fact." David v. Commonwealth, 26 Va. App. 77, 81, 493 S.E.2d 379, 381 (1997). In conducting our review, we consider the juror's entire *voir dire*, not merely isolated statements. Lovitt, 260 Va. at 510, 537 S.E.2d at 875. A trial court's decision on this issue will not be disturbed on appeal absent a showing that the trial court abused its discretion. Vinson v. Commonwealth, 258 Va. 459, 467, 522 S.E.2d 170, 176 (1999), cert. denied, 530 U.S. 1218 (2000).

Here, the specific issue is whether Juror B's knowledge of the offense disqualified her from serving on the jury. We first note that jurors need not be totally unaware of the facts and issues involved in the case. Mueller v. Commonwealth, 244 Va. 386, 404, 422 S.E.2d 380, 392 (1992).

In Foster v. Commonwealth, 6 Va. App. 313, 369 S.E.2d 688 (1988), several jurors had knowledge of details of the offense from a previous trial. We held the trial court was not plainly wrong in not striking those jurors for cause because they each stated that knowledge would not affect their impartiality. Id. at 331, 369 S.E.2d at 699. In Briley v. Commonwealth, 221 Va. 532, 273 S.E.2d 48 (1980), the Supreme Court of Virginia addressed the issue of a juror having knowledge of the offense from newspaper reports. In that case, two prospective jurors had heard broadcasts or read accounts of the defendant's criminal activities. The Court held, however, that since the jurors had not formed an opinion concerning Briley's guilt, and because both jurors stated unequivocally that they would determine the case based solely upon the evidence presented in court, their exposure to media coverage did not disqualify them from service on the jury. Id. at 538, 273 S.E.2d at 52.

Our inquiry then is two-fold. First, what knowledge did Juror B possess? Second, could she "lay aside [her] impressions or opinions and render a verdict based on the evidence presented in court[?]" Pope v. Commonwealth, 234 Va. 114, 124, 360 S.E.2d 352, 358 (1987), cert. denied 485 U.S. 1015 (1988).

During *voir dire*, Juror B responded that from the daily report she knew appellant had been charged with murder on a date certain at a specific address. The report gave no "major details," and Juror B had no recollection of the report. Prior to *voir dire*, the trial court explained to the entire venire the appellant's name, the charge of murder, the name of the victim, and the date and location of the offense. Thus, the daily report viewed by Juror B contained no more information than was revealed to the panel by the trial court.

Appellant counters that Juror B might recall some additional facts about the case during the course of trial. Appellant's position presupposes Juror B knew more than just the basic facts as recited to the entire panel by the trial court. Juror B specified that she read from the report

only that an incident occurred, and the date and the address of the occurrence. She candidly stated, "I did not read any of the details of it." Therefore, Juror B knew of no additional facts of the case, leaving nothing else for her to recall.

Additionally, on several occasions during *voir dire*, Juror B indicated such information would not affect her ability to be fair and impartial. She would be able to decide the case solely on the evidence produced at trial.

Appellant maintains Juror B's answer was equivocal, expressing doubt as to her impartiality. When again asked whether she could give appellant a fair hearing based on the evidence presented at trial and not based on her working with police officers, Juror B responded, "I think so, yes."

Appellant isolates the "I think so" language and ignores Juror B's entire answer and her earlier statements that she would decide the case solely on the evidence presented. In Weeks v. Commonwealth, 248 Va. 460, 450 S.E.2d 379 (1994), when asked whether he could be fair and impartial, a prospective juror replied, "I think so." In finding the trial court properly refused to strike that juror, the Supreme Court of Virginia concluded:

> Our duty to defer to the trial judge on this subject is illustrated by
> [the juror's] final answer, "I think so," which the trial judge, not
> this Court, heard. The juror's emphasis on "so" in that answer
> conveys an entirely different meaning than if the emphasis had
> been on "think." On appeal, we must presume he emphasized
> "so."

Id. at 475, 450 S.E.2d at 389.

Here, Juror B's answer was not equivocal. Based on her previous answer and "I think so, yes," we presume the trial court, as in Weeks, viewed "yes" as the ultimate response.

To the extent that appellant argues that Juror B should have been struck for cause because of her employment with the police department, we point out that we disfavor *per se* disqualification of a juror by reason of her status alone. Townsend v. Commonwealth, 270 Va.

- 11 -

325, 331, 619 S.E.2d 71, 74 (2005). Specifically, a prospective juror is not subject to automatic exclusion because of an association with law enforcement personnel, provided the juror has no knowledge of the facts of the case and demonstrates impartiality toward the parties. Clozza v. Commonwealth, 228 Va. 124, 129, 321 S.E.2d 273, 276 (1984). As previously stated, Juror B had no greater knowledge of the case than the other panel members by virtue of her employment, and she expressed her impartiality, which the trial court accepted.[2]

In our review of the whole *voir dire* testimony of Juror B, we find no indication that she could not "lay aside [her] impressions or opinions and render a verdict based on the evidence presented in court." Pope, 234 Va. at 124, 360 S.E.2d at 358. Accordingly, we find no error in the trial court's refusal to strike Juror B for cause. The trial court observed Juror B, evaluated her responses, and determined that she could fairly try the issues presented. Based upon our examination of the record, we find that this determination was not plainly wrong.

### CONCLUSION

For the foregoing reasons, we find the trial court did not err in not disqualifying the Richmond Commonwealth's Attorney's Office and in not striking Juror B for cause. Accordingly, the judgment of the trial court is affirmed.

Affirmed.

---

[2] Citing Clozza, 228 Va. 124, 321 S.E.2d 273, appellant emphasized for the first time on appeal that Juror B's position within the police department, standing alone, caused her to be impartial. At trial, appellant argued how Juror B's knowledge of the details contained within the report demonstrated her bias. She did not contend below that the nature of Juror B's employment as an assistant to the Assistant Chief of Police would affect her impartiality. Therefore, we do not address this specific issue here. See Rule 5A:18 as it stated at the time this appeal was pending ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated together with the grounds therefor at the time of the ruling."). Thus, before we may address an argument on appeal, an accused must present the specific argument to the trial court that he wishes to raise on appeal. Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (*en banc*).