COURT OF APPEALS OF VIRGINIA


Present: Judges Elder, Frank and Haley
Argued at Chesapeake, Virginia


MICHAEL EUGENE LACEY

                                                          OPINION BY
v.        Record No. 1407-08-1                    JUDGE JAMES W. HALEY, JR.
                                                          APRIL 28, 2009
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Patricia L. West, Judge

        Justin W. Esworthy, Assistant Public Defender (Office of the Public
        Defender, on brief), for appellant.

        Joshua M. Didlake, Assistant Attorney General (Robert F.
        McDonnell, Attorney General, on brief), for appellee.


I.  INTRODUCTION

Michael Eugene Lacey appeals his convictions for statutory burglary and third or

subsequent offense petit larceny.  Lacey maintains (1) the evidence of statutory burglary was

insufficient since it showed he entered a dwelling house through an open garage door, and (2) the

trial court erred in denying his motion for mistrial where a jury verdict form improperly

referenced prior larceny offenses contrary to the stipulation of the parties.  We find his first

argument persuasive and reverse the statutory burglary conviction and dismiss the indictment.

We hold his second argument procedurally barred and so affirm the conviction for third or

subsequent offense petit larceny.

## II. BACKGROUND

### A. Statutory Burglary

On the afternoon of May 5, 2007, H.F. was trimming a tree at his house in Virginia Beach. One of his two garage doors was open. H.F. noticed his trimmer blade failed to work as well as desired, so he decided to sharpen it in the garage. H.F. also stored the trimmer in the garage. As H.F. disassembled the trimmer, he saw Lacey emerge from a "utility room" connecting the house to the interior of the garage. A door must be opened to enter the utility room from the garage. H.F. asked Lacey why he was in the house. When Lacey failed to respond, H.F. inquired again and Lacey stated he had to use the restroom. Believing Lacey lacking in truthfulness, H.F. accused him of burglarizing the house. Lacey then ran from the scene. H.F. attempted to pursue him, but could not keep pace. When H.F. returned to his home, he discovered $152 in cash missing from his wallet in his bedroom. H.F. contacted the police, and two officers came to his house. He provided a description of the intruder to them.

Police apprehended Lacey shortly after speaking with H.F. Police Officer W.R. Chisholm recovered exactly $152 from Lacey's person. H.F. identified Lacey as the person who burglarized his house.

Photos of H.F.'s residence later introduced by Lacey at trial show the house to have two stories, with an attached two-door garage extending to the side. The garage shares a roof with the first floor of the house so that the roof over the main portion of the dwelling and the roof over the garage form one single roof. The brickwork on the first floor of the house also extends to the garage so that one wall covers both.

A grand jury indicted Lacey for third or subsequent offense petit larceny and statutory burglary. Lacey was tried by a jury on February 13, 2008.

Lacey made a motion to strike the statutory burglary charge on the basis that the Commonwealth's evidence failed to show a breaking into H.F.'s house since H.F. testified the garage door was open and no evidence suggested Lacey entered by other means. The court denied the motion, concluding the garage was not part of the dwelling and, therefore, Lacey's actions in entering the interior of the house constituted a breaking under the statute.

B. The Motion for Mistrial

On the day of trial, the parties informed the court of a stipulation regarding the third or subsequent offense petit larceny charge. The parties agreed Lacey would stipulate to the existence of two prior larceny convictions and the Commonwealth would present no evidence during the guilt phase as to those convictions. Furthermore, the jury would not be told of the stipulation. As far as the jury was concerned, Lacey would be tried for first offense petit larceny. Only if the jury convicted Lacey of first offense larceny would it be given evidence of prior convictions during the sentencing phase of trial. Lacey agreed not to object to the lack of proof of prior convictions during the guilt phase. The court agreed to the stipulation.

Nonetheless, at the conclusion of the evidence, the jury was given a verdict form stating Lacey was charged with third or subsequent offense petit larceny. One of the two options on the larceny verdict form stated: "We, the jury, find the defendant GUILTY of Petit Larceny, Third or Subsequent Offense as charged in the indictment."[1] Lacey made no objection to this verdict form before the jury retired or delivered its verdict. The jury convicted Lacey on both charges.

The following day, before the sentencing phase began, Lacey moved for a mistrial based on the defective verdict form. Lacey's counsel stated he "looked at them [the verdict forms] yesterday, and I missed it yesterday." The Commonwealth agreed it also made a good faith error in overlooking the defective form. In considering the motion, the trial court noted both sides

---

[1] The other option stated: "We, the jury, find the defendant NOT GUILTY."

"were given the opportunity to review" the verdict form. The court further stated the parties "should have caught it." The court ultimately denied the motion for mistrial on the ground that Lacey suffered no prejudice.

The trial court entered an order finding Lacey guilty of statutory burglary and third or subsequent offense petit larceny. This appeal followed.

## III. ANALYSIS

### A. Sufficiency of the Evidence Concerning a Breaking

Lacey maintains he entered the dwelling home when he entered the attached garage through an open door and his subsequent breaking into the utility room constituted a breaking within a dwelling house, not a breaking into a dwelling house. We agree.

Under well established principles, we "consider the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth, the prevailing party below." Walker v. Commonwealth, 272 Va. 511, 513, 636 S.E.2d 476, 477 (2006). We will affirm "the judgment of the trial court unless it is plainly wrong or without evidence to support it." Jones v. Commonwealth, 276 Va. 121, 124, 661 S.E.2d 412, 414 (2008).

On the other hand, statutory interpretation presents a pure question of law receiving *de novo* review. Wright v. Commonwealth, 275 Va. 77, 80-81, 655 S.E.2d 7, 9 (2008). Our primary goal in interpreting a statute "is to ascertain and give effect to legislative intent." Commonwealth v. Zamani, 256 Va. 391, 395, 507 S.E.2d 608, 609 (1998). To this end, the Court determines "the General Assembly's intent from the words contained in a statute." Washington v. Commonwealth, 272 Va. 449, 455, 634 S.E.2d 310, 313 (2006). "An undefined term must be 'given its ordinary meaning, given the context in which it is used.'" Sansom v. Bd. of Supervisors, 257 Va. 589, 594-95, 514 S.E.2d 345, 349 (1999) (quoting Dep't of Taxation v. Orange-Madison Coop. Farm Serv., 220 Va. 655, 658, 261 S.E.2d 532, 533-34 (1980)). We

strictly construe penal statutes against the Commonwealth, Welch v. Commonwealth, 271 Va. 558, 563, 628 S.E.2d 340, 342 (2006), but remember "that the plain, obvious, and rational meaning of a statute is always to be preferred to any curious, narrow, or strained construction," Turner v. Commonwealth, 226 Va. 456, 459, 309 S.E.2d 337, 338 (1983). Hence, "we will not apply 'an unreasonably restrictive interpretation of the statute' that would subvert the legislative intent expressed therein." Armstrong v. Commonwealth, 263 Va. 573, 581, 562 S.E.2d 139, 144 (2002) (quoting Ansell v. Commonwealth, 219 Va. 759, 761, 250 S.E.2d 760, 761 (1979)).

Lacey was convicted of statutory burglary under Code § 18.2-91. In relevant part, that section provides that "[i]f any person commits any of the acts mentioned in § 18.2-90 with intent to commit larceny . . . he shall be guilty of statutory burglary." In turn, Code § 18.2-90 in relevant part states that "[i]f any person . . . in the daytime breaks and enters . . . a dwelling house . . . he shall be deemed guilty of statutory burglary."[2] Thus, a conviction under Code § 18.2-91 required the Commonwealth to prove (1) a breaking and entering in the daytime of (2) a dwelling house and (3) with intent to commit larceny. The presence of an intent to commit larceny is not at issue. We consider the first two elements in turn.

"A breaking for purposes of statutory burglary may be either actual or constructive." Finney v. Commonwealth, 277 Va. 83, 88, 671 S.E.2d 169, 172 (2009). An actual breaking merely requires "'the application of some force, slight though it may be, whereby the entrance is effected. Merely pushing open a door, turning the key, lifting the latch, or resort to other slight physical force is sufficient to constitute this element of the crime.'" Johnson v. Commonwealth,

---

[2] Code § 18.2-90 also provides a person may commit statutory burglary by entering and concealing himself in a dwelling. At trial, the Commonwealth asserted Lacey did enter and conceal himself under this statute. However, the Commonwealth has not advanced this argument on appeal. Rather, the Commonwealth's brief states that "the only issue is whether the evidence proved Lacey 'broke' into [H.F.'s] home." As such, we decline to consider whether Lacey concealed himself in the residence.

221 Va. 872, 876, 275 S.E.2d 592, 594-95 (1981) (quoting Davis v. Commonwealth, 132 Va. 521, 523, 110 S.E. 356, 357 (1922)).

It is undisputed for purposes of this appeal that Lacey entered H.F.'s open garage in the daytime without any physical force, but employed force to enter the utility room.[3] This force constituted a breaking. The question of whether Lacey broke into a dwelling home upon entering the utility room, or whether he had entered the dwelling house in the attached garage, requires greater consideration.

The Virginia Supreme Court has stated that "[b]urglary was, at common law, primarily an offense against the security of the habitation, and that is still the general conception of it. A difference is recognized between the crime of wrongfully entering . . . a house where people live and the crime of entering a house where chickens roost." Compton v. Commonwealth, 190 Va. 48, 55, 55 S.E.2d 446, 449 (1949). The burglary statutes exist to protect against "the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence." Yeatts v. Commonwealth, 242 Va. 121, 140, 410 S.E.2d 254, 266 (1991) (internal quotation marks and citation omitted).

Recognizing these concerns, our Supreme Court recently defined the meaning of a "dwelling house" in the burglary statutes in Giles v. Commonwealth, 277 Va. 369, 672 S.E.2d

---

[3] The record actually contains no evidence Lacey committed a breaking when he entered the utility room. Counsel for both sides and the trial court simply assumed he did, and Lacey does not challenge this lack of proof on appeal. Lacey's counsel conceded at oral argument he may not challenge the conviction on this basis. Based on this record, with no arguments made on the issue here or below, we decline to address it. Rule 5A:12(c) ("Only questions presented in the petition for appeal will be noticed by the Court of Appeals."); Clifford v. Commonwealth, 274 Va. 23, 25, 645 S.E.2d 295, 297 (2007) (holding this Court erred in considering an argument presented to the trial court, but not advanced on appeal). Like the parties, we will assume Lacey committed a breaking to enter the utility room.

879 (2009). The Court held "a dwelling house is a house that one uses for habitation, as opposed to another purpose." Id. at 375, 672 S.E.2d at 883.

In Hitt v. Commonwealth, 43 Va. App. 473, 477, 481, 598 S.E.2d 783, 784-85, 787 (2004), this Court held the breaking of a room within a dwelling house does not constitute the breaking of a dwelling as required by the burglary statutes; rather, only the breaking and entering from outside the dwelling into the dwelling suffices. In Hitt, the defendant spent the night in a home with the occupants' permission. Id. at 476, 598 S.E.2d at 785. After the occupants departed, the defendant broke into a locked bedroom and stole money from within it. Id. at 477, 598 S.E.2d at 784-85. Like Lacey, the defendant in Hitt was convicted of statutory burglary under Code § 18.2-91. Id. at 477, 598 S.E.2d at 785. In considering whether the defendant's actions constituted burglary, we stated that a "dwelling house" "contemplates a *residence* within which human beings sleep or habitate. It does not contemplate individual rooms or compartments within such a 'residence,' that are not dwelling houses in and of themselves . . . ." Id. at 481, 598 S.E.2d at 787. The Court further quoted Lockhart v. State, 60 S.E. 215, 216 (Ga. Ct. App. 1908), for the notion that where a case involves a private home, "breaking into the house is necessary to be shown, in order to constitute a burglary. The breaking and entering of one of the rooms of such private dwelling-house, where the entrance into the house is accomplished without breaking, is not burglary." Hitt, 43 Va. App. at 483, 598 S.E.2d at 788 (internal quotation marks omitted). Since the defendant in Hitt had not broken into a dwelling, but only into a room within one, we reversed the conviction.[4] Id.

---

[4] It makes no difference that the defendant in Hitt had permission to enter the house, whereas Lacey did not. The language and holding of Hitt speak of the necessity of a breaking into a dwelling for burglary to occur and that entrance into a dwelling without breaking followed by a breaking into a room does not result in burglary. This makes Hitt directly applicable to this case. Neither Hitt nor this case concerns trespassing.

- 7 -

Although Virginia courts have not previously considered whether a garage attached to a house represents part of the dwelling, courts in other jurisdictions have found such an attached garage constitutes a portion of the dwelling, akin to a room. As one court held: "In the situation where the garage is an attached and integral part of the house, it is simply one room of several which together compose the dwelling. This is especially true where . . . the garage can be reached through an inside door connecting it to the rest of the residence." People v. Cook, 185 Cal. Rptr. 576, 582 (Cal. Ct. App. 1982); see also State v. Wills, 696 N.W.2d 20, 23 (Iowa 2005) ("[T]he record reveals the [attached] garage . . . [was] separated from the living quarters by a door. The same roof covered the garage as the rest of the residence. The living quarters surrounded the garage on two sides. It was structurally no different from any other room in the residence."); Gaunt v. State, 457 N.E.2d 211, 214 (Ind. 1983) ("[T]he garage was attached to the house, contained an interior connecting door and was used for household storage--a purpose connected with family living. That the breaking into the garage did not afford the Defendant immediate access to the actual living quarters is immaterial."). Even where a garage did not have interior access to the house, it has been held a portion of the dwelling where it was attached to the house. Thus, it was held that "given the fact that the garage was under the same roof, functionally interconnected with, and immediately contiguous to other portions of the house, simple logic would suffer if we were to . . . [hold] a garage is not part of a dwelling because no inside entrance connects the two." People v. Moreno, 204 Cal. Rptr. 17, 19 (Cal. Ct. App. 1984); see also State v. Bryant, 775 So. 2d 596, 602 (La. Ct. App. 2000) ("Although the carport storage room had no direct entrance into the residence, it nevertheless formed part of the structure of the house; the room was under the same roof as the house."); State v. Lara, 587 P.2d 52, 52 (N.M. Ct. App. 1978) (holding that "[t]he fact that there was no direct access to the interior of the house from the garage does not aid defendant" since "[t]he garage was part of the

- 8 -

habitation"); cf. Burgett v. State, 314 N.E.2d 799, 802-04 (Ind. Ct. App. 1974) (holding a basement with no interior access to the house was part of the dwelling).

Other states also hold attached garages comprise part of a dwelling house. See State v. Otto, 529 N.W.2d 193, 196 (S.D. 1995) ("A garage which is attached to a house logically is all part of the same building, and thus is part of the house or occupied structure."); State v. Murbach, 843 P.2d 551, 553 (Wash. Ct. App. 1993) ("We hold the definition of dwelling . . . includes the Scheels' attached garage."); State v. Haas, 510 P.2d 852, 854 (Or. Ct. App. 1973) ("The garage was under the same roof as the rest of the dwelling and was surrounded on three sides by rooms occupied by the family. As such it was structurally no different than any other room in the house.").

Some courts holding an attached garage to be part of a dwelling have also noted the normal functions of daily living for which residents use the garage.[5] One court remarked that "at least some of the usual uses of a residential garage, including storage of household items, are incidental to and part of the habitation uses of the residence itself." People v. Jiminez, 651 P.2d 395, 396 (Colo. 1982). An Indiana court found important that a "freezer full of food for use by the family was situated in the garage, as well as a pool table for the family's recreation." Abbott v. State, 371 N.E.2d 721, 724 (Ind. Ct. App. 1978).

Another court well synthesized the above law: "The proper focus is whether the attached structure is an integral part of a dwelling, that is, functionally interconnected with and

---

[5] This reasoning accords with our statement in Hitt that while dwelling house activity "necessarily includes sleeping, it clearly also includes other 'dwelling-related' activities . . . traditionally associated with 'habitation.'" 43 Va. App. at 483, 598 S.E.2d at 787.

immediately contiguous to other portions of the house." People v. Ingram, 48 Cal. Rptr. 2d 256, 261 (Cal. Ct. App. 1995).[6]

We find this reasoning persuasive and, applying it here, conclude the attached garage was part of the dwelling house for purposes of the burglary statute.[7] Photos of the house introduced at trial plainly show the garage is an integrated part of the whole house. The garage shares a roof and wall with the other portions of the house. The garage also connects interiorly with other portions of the house. Lacey took advantage of this to enter the open garage, pass into the utility room, steal money from H.F.'s bedroom, and then exit the garage again. Furthermore, H.F. uses the garage for ordinary household functions. He testified he stored the tree pruner in the garage and that he was preparing to sharpen it in the garage when he first noticed Lacey. Under such circumstances, the attached garage represented another room of the dwelling.

Finding an attached garage a portion of the dwelling comports with the purpose underlying the burglary statutes of protecting the sanctity of the home. Compton, 190 Va. at 55, 55 S.E.2d at 449. Since the burglary statutes aim to protect a person's place of habitation and an attached garage is structurally and functionally part of the habitation, the burglary statutes naturally protect the garage. See Rash v. Commonwealth, 9 Va. App. 22, 25, 383 S.E.2d 749, 751 (1989) (noting that "[t]he theoretical basis of common law burglary was the ancient notion

---

[6] This same court later stated: "'Functionally interconnected' means used in related or complementary ways. 'Contiguous' means adjacent, adjoining, nearby or close." People v. Rodriguez, 92 Cal. Rptr. 2d 236, 240 (Cal. Ct. App. 2000).

[7] On brief, the Commonwealth cites State v. May, 39 Kan. App. 2d 990, 186 P.3d 847 (2008), and Railey v. State, 273 Ga. App. 520, 615 S.E.2d 609 (2005), for the notion that entry through an open garage followed by a breaking suffices for a burglary conviction. Neither case involved the issue addressed here. May considered when a person besides the defendant had to be in the house for purposes of Kansas' aggravated burglary statute, as well as whether the defendant had the required intent. 39 Kan. App. at 992-95. Railey concerned whether the defendant possessed the requisite intent. 273 Ga. App. at 521.

that a man's home was his castle and that he had the right to feel safe therein"). As just another room of the dwelling, an attached garage receives the same protection as every other room.

Since the garage was part of the dwelling house and statutory burglary under Code § 18.2-91 requires a breaking from the outside of the dwelling, Lacey's entry through the open garage door and subsequent breaking of an interior door failed to meet the elements of the offense. Lacey's actions merely represented an intra-house breaking. See Hitt, 43 Va. App. at 483, 598 S.E.2d at 788 (quoting Lockhart, 60 S.E. at 216, for the notion that "'breaking and entering one of the rooms of such private-dwelling house, where the entrance into the house is accomplished without breaking, is not burglary'"); see also Foyt v. State, 122 S.W.2d 641, 642 (Tex. Crim. App. 1938) (finding error where "the jury might have reached the conclusion that appellant was guilty of burglary if he entered the garage through an open door"). Since the evidence was insufficient, we reverse the conviction for statutory burglary and dismiss the indictment.

### B. The Motion for Mistrial

Lacey next maintains the trial court erred in denying his motion for mistrial since the verdict form given to the jury stated Lacey was charged with third or subsequent offense petit larceny even though the parties and the trial court agreed that as far as the jury was concerned Lacey would only be tried for first offense petit larceny during the guilt phase. We hold Lacey's motion for mistrial, made after the jury retired, was untimely. Lacey has, therefore, waived his right to have us consider it.

Rule 5A:18 provides in part: "No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice."

The contemporaneous objection rule exists "'to protect the trial court from appeals based upon undisclosed grounds, to prevent the setting of traps on appeal, to enable the trial judge to rule intelligently, and to avoid unnecessary reversals and mistrials.'" Jimenez v. Commonwealth, 241 Va. 244, 248-49, 402 S.E.2d 678, 680 (1991) (quoting Fisher v. Commonwealth, 236 Va. 403, 414, 374 S.E.2d 46, 52 (1988)). The rule is "not limited to evidentiary rulings," Williams v. Gloucester Sheriff's Dep't, 266 Va. 409, 411, 587 S.E.2d 546, 548 (2003), but applies even to constitutional arguments, Townsend v. Commonwealth, 270 Va. 325, 332, 619 S.E.2d 71, 75 (2005).

The Virginia Supreme Court has consistently held a "motion for a mistrial is untimely and properly refused when it is made after the jury has retired." Cheng v. Commonwealth, 240 Va. 26, 39, 393 S.E.2d 599, 606 (1990); see also Schmitt v. Commonwealth, 262 Va. 127, 148, 547 S.E.2d 186, 201 (2001); Breard v. Commonwealth, 248 Va. 68, 82, 445 S.E.2d 670, 679 (1994). Thus, in Cheng, the Court held: "[T]hese alleged errors were not preserved at trial. Accordingly, we will not consider them on appeal." 240 Va. at 39, 393 S.E.2d at 606.

Application of these principles leads to the conclusion Lacey waived his arguments concerning the defective jury verdict form by failing to timely raise his motion for mistrial before the trial court. Lacey should have alerted the trial court to the error before the jury retired. Yet Lacey did not inform the trial court until after the verdict when he moved for a mistrial. Lacey's counsel acknowledged to the trial court he had the opportunity to review the verdict form before the jury received it, and the trial court also mentioned this. Lacey's counsel made no objection. Virginia courts have frequently noted the contemporaneous objection rule serves to prevent mistrials that could be avoided by timely action of trial counsel. Lacey's failure to address the defective verdict form before the jury retired waived consideration of the issue by this Court.

At oral argument, Lacey's counsel asked that we invoke the ends of justice exception to Rule 5A:18 to consider the merits of his argument. We decline this invitation.

As our Supreme Court has stated, application of the ends of justice exception "requires a determination not only that there was error . . . but also that application of the exception is necessary to avoid a grave injustice." Charles v. Commonwealth, 270 Va. 14, 20, 613 S.E.2d 432, 434 (2005). This occurs only in "rare instances." Ball v. Commonwealth, 221 Va. 754, 758, 273 S.E.2d 790, 793 (1981).

The ends of justice exception allows this Court to avoid upholding a "miscarriage of justice." Mounce v. Commonwealth, 4 Va. App. 433, 436, 357 S.E.2d 742, 744 (1987). Yet the defendant must affirmatively demonstrate the existence of such a miscarriage, "not that a miscarriage *might* have occurred." Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997). A trial court's error standing alone, even when of constitutional significance, does not suffice. West v. Commonwealth, 43 Va. App. 327, 339, 597 S.E.2d 274, 279 (2004).

Here the record fails to demonstrate any miscarriage of justice. The jury verdict form stated the offense Lacey was, in fact, actually charged with: third or subsequent offense petit larceny. While the submission of the form to the jury was error since the parties agreed to only try Lacey for first offense petit larceny during the guilt phase as far as the jury was concerned, the error imposed no grave injustice upon Lacey. Although unknown to the jury, Lacey was being tried for third or subsequent offense petit larceny. Lacey stipulated to the existence of two prior larceny convictions. Additionally, we have held the Commonwealth may introduce predicate larceny offenses during the guilt phase of a third offense petit larceny trial since such convictions represent an element of the offense. Pittman v. Commonwealth, 17 Va. App. 33, 35-36, 434 S.E.2d 694, 695-96 (1993).

Moreover, as Lacey's counsel correctly conceded at oral argument, the evidence of guilt was overwhelming. Cf. Bazemore v. Commonwealth, 42 Va. App. 203, 222-23, 590 S.E.2d 602, 611-12 (2004) (*en banc*) (declining to apply the ends of justice exception in the context of a defective jury instruction where the evidence clearly proved the defendant committed the offense). H.F. testified Lacey unexpectedly emerged from the house and that Lacey fled when H.F. accused him of burglarizing the house. When H.F. returned to his home after chasing Lacey, he discovered $152 in cash missing from his wallet. This was the same amount Officer Chisholm took from Lacey after stopping him only minutes after Lacey left H.F.'s residence. The evidence convincingly proved Lacey stole money from H.F. The erroneous jury verdict form imposed no substantial injustice under these facts.

As we have already reversed and dismissed the statutory burglary conviction, this assignment of error concerns only the third or subsequent offense petit larceny conviction. We affirm that conviction.

## IV. CONCLUSION

For the foregoing reasons, we reverse Lacey's conviction for statutory burglary and dismiss the indictment. We affirm his conviction for third or subsequent offense petit larceny.

Affirmed in part,
reversed and
dismissed in part.
