COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present: Judges Decker, Russell and Senior Judge Felton
Argued at Norfolk, Virginia


CHARLES JAYSON BECK, S/K/A
 CHARLES JASON BECK

v.     Record No. 0997-15-1

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE WESLEY G. RUSSELL, JR.
APRIL 26, 2016


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Wilford Taylor, Jr., Judge

Ben Pavek, Assistant Public Defender, for appellant.

Aaron J. Campbell, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Appellant, Charles Jayson Beck, was convicted in a bench trial of breaking and entering in

violation of Code § 18.2-91, grand larceny in violation of Code § 18.2-95, and obtaining money by

false pretenses in violation of Code § 18.2-178.[1]  On appeal, appellant first argues the evidence is

insufficient to prove a burglary because the evidence showed appellant broke within a dwelling

rather than broke into a dwelling.  In the alternative, appellant argues the trial court erred in

convicting him of burglary because the evidence failed to prove beyond a reasonable doubt whether

the offense occurred during the daytime or during the nighttime.  For the reasons that follow, we

affirm appellant's burglary conviction.

---

[1] Appellant did not appeal his conviction for obtaining money by false pretenses.  He did
appeal his conviction for grand larceny; however, this Court did not grant his petition for appeal
as it relates to that conviction.

BACKGROUND

"Under well-settled principles of appellate review, we consider the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below." Smallwood v. Commonwealth, 278 Va. 625, 629, 688 S.E.2d 154, 156 (2009) (quoting Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008)). This principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis, citation, and internal quotation marks omitted).

Colleen Shook ("Shook") lived with her son in a single family home in Hampton. Previously, to provide a place for her mother to live, Shook converted three bedrooms within the house into what she described as a separate apartment, comprised of its own living quarters, including a kitchen containing a refrigerator, stove, and dishwasher.

Although the apartment was initially intended for use by Shook's mother, Shook made it available for rent once her mother no longer used the apartment. Appellant and his mother were tenants in the apartment in September of 2013.

The apartment has its own entrance and is connected to the Shooks' living quarters by a utility room that houses laundry facilities. The utility room has three doors—one leading to the apartment, one to the Shooks' living quarters, and the third to the garage. The utility room is the sole passageway between the apartment and the Shooks' living quarters.

Shook testified the appellant never had permission to enter her side of the home, although there were times when he was there by invitation. The door from the Shooks' living quarters to the laundry room was always closed. It is undisputed that appellant had permission to use the utility room and that, in at least some circumstances, he had permission to access the garage.

- 2 -

On September 20, 2013, Shook discovered that two guitars and thirty pieces of jewelry were missing from the Shooks' living quarters. On September 23, 2013, appellant pawned one of the guitars at a local pawn shop. At trial, appellant admitted to pawning the guitar, but claimed that he had permission to do so.

At the close of the Commonwealth's evidence, appellant made a motion to strike. In denying the motion, the trial court, recognizing the garage and utility room as common areas, stated that "the evidence that is presented . . . established that Mrs. Shook had separated or created a separate place by the renovation project. . . . [H]er mother had a separate apartment . . . ." At the close of all the evidence and arguments of counsel, the court ruled that appellant's apartment was "separate and distinct from where the Shooks were living . . . ," and, accordingly, found appellant guilty of burglary.

This appeal follows.

## ANALYSIS

"[A]t common law, [burglary was] primarily an offense against the security of the habitation, and that is still the general conception of it." Compton v. Commonwealth, 190 Va. 48, 55, 55 S.E.2d 446, 449 (1949). Although the burglary statutes contain varied elements, their unifying purpose is

> based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation—the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence.

Rash v. Commonwealth, 9 Va. App. 22, 25, 383 S.E.2d 749, 751 (1989) (quotation marks and citation omitted).

Appellant was convicted of burglary in violation of Code § 18.2-91. In pertinent part, the statute provides that "[i]f any person commits any of the acts mentioned in § 18.2-90 with intent to

commit larceny . . . he shall be guilty of statutory burglary." Code § 18.2-90 includes the acts of either entering a dwelling house in the nighttime or breaking and entering into a dwelling house in the daytime. See also Grimes v. Commonwealth, 288 Va. 314, 317, 764 S.E.2d 262, 264 (2014) ("Code § 18.2-90 includes the act of breaking and entering into a dwelling house in the daytime.").

Appellant argues that the evidence was insufficient to establish the elements of statutory burglary in violation of Code § 18.2-91. First, he argues that, at most, the evidence showed that any breaking occurred *within* a single residence, and thus, the evidence did not establish the necessary entry *into* a dwelling.[2] Second, he argues that the evidence did not establish that he either entered a dwelling during the nighttime or that he broke and entered into a dwelling in the daytime.

Because appellant is challenging the sufficiency of the evidence, we, as noted above, review the evidence in the light most favorable to the Commonwealth, the prevailing party below, and grant it all reasonable inferences from the evidence. Parks, 221 Va. at 498, 270 S.E.2d at 759. We "will reverse a judgment of the circuit court only upon a showing that it is plainly wrong or without evidence to support it." Singleton v. Commonwealth, 278 Va. 542, 548, 685 S.E.2d 668, 671 (2009) (citation omitted); see also Code § 8.01-680.

I. The evidence was sufficient to allow the trial court to conclude that the Shooks' living quarters and appellant's apartment were separate dwellings that share common areas

Relying heavily on our decisions in Hitt v. Commonwealth, 43 Va. App. 473, 598 S.E.2d 783 (2004), and Lacey v. Commonwealth, 54 Va. App. 32, 675 S.E.2d 846 (2009), appellant argues that the Shooks' living quarters, the utility room, the attached garage, and appellant's apartment are

---

[2] Appellant consistently has maintained that he neither broke nor entered the Shooks' living quarters and that he did not commit larceny therein; however, he recognizes that, by convicting him of the larceny, the trial court necessarily found that he did enter the Shooks' living quarters.

all parts of the same dwelling, and therefore, appellant cannot be convicted of burglary. He reasons that instead of breaking *into* a dwelling, the evidence, at most, shows he broke *within* a dwelling.

Appellant correctly notes that, in <u>Hitt</u>, we held that the burglary statutes required breaking and/or entering *into* a dwelling as opposed to *within* a dwelling. 43 Va. App. at 483, 598 S.E.2d at 788. Specifically, we adopted Hitt's argument that he could not have committed a statutory burglary of a locked bedroom in a house where he was otherwise authorized to be because the locked bedroom and the remainder of the house were all part of one "dwelling." <u>Id.</u> at 479, 598 S.E.2d at 786.

Although appellant correctly has stated its general rule, <u>Hitt</u> does not provide the rule of decision in the instant case. Rather, it simply frames the question: Did the evidence necessarily establish that the Shooks' living quarters were part of the same "dwelling" as appellant's apartment or other areas of the structure where he was authorized to be?

Appellant argues that our decision in <u>Lacey</u> compels that this question be answered in the affirmative. In <u>Lacey</u>, we concluded that the attached garage was part of the same dwelling as the rooms where the larceny had occurred. Specifically, referencing the particular facts in the case, we concluded that

> the attached garage was part of the dwelling house for purposes of the burglary statute. Photos of the house introduced at trial plainly show the garage is an integrated part of the whole house. The garage shares a roof and wall with the other portions of the house. The garage also connects interiorly with other portions of the house. Lacey took advantage of this to enter the open garage, pass into the utility room, steal money from [the victim's] bedroom, and then exit the garage again. Furthermore, [the victim] uses the garage for ordinary household functions. He testified he stored the tree pruner in the garage and that he was preparing to sharpen it in the garage when he first noticed Lacey. Under such circumstances, the attached garage represented another room of the dwelling.

54 Va. App. at 43, 675 S.E.2d at 852 (footnote omitted); <u>see also</u> <u>Grimes</u>, 288 Va. at 318-19, 764 S.E.2d at 265 (holding that because the crawlspace at issue was "structurally part of the house,"

- 5 -

it fell "within the plain meaning of the term 'dwelling house'" for the purposes of statutory burglary).[3]

Appellant correctly points out that the garage (and by extension, the utility room) in this case shares many characteristics with the garage in Lacey. In both cases, the garages were under a single roof, shared walls with the remainder of the structure, were utilized by the residents for multiple purposes, were connected by doors that could and were used for ingress and egress, and, as originally constructed, functioned as part of a single-family home.

While the similarities between the garages are many, there is a significant difference. Although, as *originally* constructed, both garages served single-family homes that were unquestionably part of an undivided whole, the garage in this case no longer does. The law has long recognized that joint access to common areas in a multi-unit apartment complex or rooming house does not render it impossible for a resident of that complex or rooming house to burglarize other units within the complex or rooming house. See generally Clarke v. Commonwealth, 66 Va. (25 Gratt.) 908, 919 (1874) (recognizing that, although a person cannot burglarize his own room/residence in a multi-person rooming house, he may commit a burglary as to rooms rented by others). As a modern commentator has noted,

> [i]f several people occupy the same dwelling, none may commit a burglary thereto as it is not the property of another. However, if a portion of the structure has been set aside for one resident, as in letting an apartment, any of the others (including the owner) could commit a burglary into that portion of the dwelling.

---

[3] Whether a garage, crawlspace or other area constitutes part of a dwelling is, by necessity, a fact-driven inquiry. The conclusions of the Virginia Supreme Court in Grimes and this Court in Lacey were expressly tied to the particular facts and circumstances of those cases. See Grimes, 288 Va. at 319, 764 S.E.2d at 265 (holding that, "*[b]ased on the facts here*, the crawl space falls within the plain meaning of the term 'dwelling house'" (emphasis added)); Lacey, 54 Va. App. at 43, 675 S.E.2d at 852 (tying the resolution of the issue to the particular "circumstances").

- 6 -

Wayne R. LaFave, Substantive Criminal Law § 21.1(c), at 214 (2nd ed. 2003) (footnotes omitted). Thus, if the factfinder reasonably could conclude that the garage and utility room were common areas between separate apartments, appellant's argument fails.

On this record, the factfinder reasonably could and, in fact, did conclude that the Shooks' living quarters and the apartment were separate dwellings and that the garage and utility room constituted common areas. The trial court noted that, in undertaking the construction of the apartment for her mother, Shook "created a separate place" that constituted "a separate apartment." Based on all of the evidence, we cannot say that the trial court's finding that the apartment was "separate and distinct from where the Shooks were living" is plainly wrong or without evidence to support it. Accordingly, we must affirm the trial court's conclusion in this regard. Kelley v. Commonwealth, 289 Va. 463, 468, 771 S.E.2d 672, 674 (2015).

In reaching this conclusion, we note that we examine a factfinder's conclusions "with the highest degree of appellate deference." Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006). "An appellate court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). Instead, the only "relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 63 (2010) (emphasis added). Here, for the reasons stated, we cannot say that the trial court was irrational when it concluded that the garage and utility room represented common areas shared by two separate apartments within one complex.

II. The evidence was sufficient to allow the trial court to conclude that appellant committed a breaking when he entered the Shooks' living quarters

Appellant argues that the evidence was insufficient to support the conclusion that he committed a breaking to gain entry to the Shooks' living quarters. Specifically, he argues that there was evidence that the garage door occasionally was left open, and therefore, he or another person could have entered the garage without committing a breaking.[4] Coupling this premise with his argument that the garage and the Shooks' living quarters are part of the same dwelling, he reasons that the Commonwealth did not and could not prove the breaking necessary to support the charge of statutory burglary. We disagree.

To establish a breaking for the purposes of burglary, the Commonwealth need only show

> the application of some force, slight though it may be, whereby the entrance is [achieved]. Merely pushing open a door, turning the key, lifting the latch, or resort to other slight physical force is sufficient to constitute this element of [burglary], so long as those acts resulted in an entrance contrary to the will of the occupier of the [property].

Finney v. Commonwealth, 277 Va. 83, 88, 671 S.E.2d 169, 172 (2009) (internal quotation marks and citations omitted) (alterations in original). Here, Shook testified that the door from the utility room into the Shooks' living quarters was always closed. Accordingly, the trial court reasonably could and, in fact, did conclude that appellant committed a breaking when he gained access to the Shooks' living quarters by opening the closed door.

Appellant argues that, even if this is so, breaking and entering has still not been proven because entry to the structure could have been through an open garage, which he contends is part

---

[4] Code § 18.2-90 provides that entering a dwelling at nighttime is statutory burglary even in the absence of a breaking. The Commonwealth concedes that there was insufficient evidence adduced as to whether entry to the dwelling occurred during the daytime or at night. Although not bound by the concession, Epps v. Commonwealth, 47 Va. App. 687, 703, 626 S.E.2d 912, 919 (2006) (*en banc*), aff'd on other grounds, 273 Va. 410, 641 S.E.2d 77 (2007), we find it appropriate to adopt it here. Accordingly, the burden was on the Commonwealth to demonstrate that entry into the Shooks' living quarters was accomplished by way of a breaking.

of the same dwelling as the Shooks' living quarters. In short, he revives his argument that the factfinder could not conclude that the garage and the utility room were common areas shared by separate apartments. Because this amounts to nothing more than a restatement of the same argument that underpinned his first assignment of error, we reject it for the reasons stated above.

CONCLUSION

Based on the evidence presented, a factfinder reasonably could conclude beyond a reasonable doubt that the Shooks' living quarters and the apartment constituted separate dwellings and that appellant committed a breaking when he entered the Shooks' living quarters and committed larceny. Accordingly, we affirm his conviction for statutory burglary in violation of Code § 18.2-91.

<u>Affirmed.</u>