COURT OF APPEALS OF VIRGINIA

Present:     Judges Chafin, Russell and Senior Judge Clements
Argued by teleconference

JEHOHANAN JEDIDIAH LAMP

                                                MEMORANDUM OPINION* BY
v.        Record No. 0660-18-3                  JUDGE TERESA M. CHAFIN
                                                JULY 16, 2019
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
W. Chapman Goodwin, Judge

S. Scott Baker (Baker Law Offices, PLC, on brief), for appellant.

Victoria Johnson, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


At the conclusion of a bench trial held on September 1, 2017, the Circuit Court of

Augusta County convicted Jehohanan Jedidiah Lamp of statutory burglary in violation of Code

§ 18.2-91, grand larceny in violation of Code § 18.2-95(ii), and larceny of property with a value

of $200 or more with the intent to sell or distribute in violation of Code § 18.2-108.01(A).  On

appeal, Lamp contends that the testimony of his codefendant "was inherently incredible to the

degree that no rational trier of fact would have found it sufficient to sustain a conviction for a

violation of [Code §] 18.2-91."  Lamp also argues that the evidence presented at his trial failed to

prove that the property allegedly stolen by him had a value of $200 or more.[1]

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] In 2018, the General Assembly amended Code §§ 18.2-95(ii) and 18.2-108.01(A) to
establish a $500 threshold for felony larceny convictions.  See 2018 Va. Acts chs. 764, 765.  The
prior $200 threshold applies in the present case because that was the effective threshold amount
under Code §§ 18.2-95(ii) and 18.2-108.01(A) when Lamp allegedly committed the offenses at
issue, as well as at the time of his trial.  See Code §§ 18.2-95(ii) (1998) and 18.2-108.01(A)
(2003).

Upon review, we conclude that the evidence presented at Lamp's trial was sufficient to support his statutory burglary conviction. However, we also conclude that the evidence failed to prove that the value of the stolen property was $200 or more. Accordingly, we affirm Lamp's conviction based on his violation of Code § 18.2-91, reverse his convictions based on his violations of Code §§ 18.2-95(ii) and 18.2-108.01(A), and remand this case to the circuit court for further proceedings.

## I. BACKGROUND

"Under well-settled principles of appellate review, we consider the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below[, and] accord the Commonwealth the benefit of all inferences fairly deducible from the evidence." Wilkins v. Commonwealth, 292 Va. 2, 6-7 (2016). So viewed, the evidence is as follows.

In August of 2016, numerous items were stolen from Carolyn Sutherly's unoccupied house in Augusta County. Lamp was eventually charged with the offenses at issue in this case after an investigation linked him to the burglary of Sutherly's house and the theft of her property.

At Lamp's trial, Samantha Morris testified that she and Lamp broke into Sutherly's house on the evening of August 12, 2016. Morris explained that she and Lamp "planned" the break-in and that they intended "to go in and find things of value . . . to sell." Morris testified that Lamp "popped [a] window" of Sutherly's house and entered the house through the window. Lamp then unlocked a door to let Morris into the house. Morris testified that she and Lamp took "antique stuff" from the house and "a bunch of jewelry" from a jewelry box in an upstairs bedroom.

Morris explained she left Sutherly's house after "maybe ten, fifteen minutes." Morris testified that Lamp stayed in Sutherly's house after she left and that he eventually left the house carrying a "big flat screen TV." Morris testified that Lamp kept all of the items that they took from Sutherly's house and that he told her that he "planned on hitting up pawn shops or antique

places to get money for the stuff." Morris testified that she drove Lamp to a pawn shop "a day later or two days later" in order for him to sell some of the items taken from Sutherly's house, but the pawn shop refused to purchase any of the property.[2]

Sutherly testified about the items that were missing from her house following the August 2016 break-in. Sutherly testified that "a lot of jewelry" was taken from a jewelry armoire located in an upstairs room of her home. While Sutherly acknowledged that some of the stolen jewelry was not authentic, she testified that some of it was made of fourteen karat gold or sterling silver and contained diamonds, cultured pearls, and gem stones.

In addition to the jewelry, Sutherly testified that a television, lamps, towels, candles, a pitcher and bowl set, computer speakers, a night-light, a VCR recorder, a camcorder, and Elvis Presley "collectibles" were stolen from her home. Sutherly noted that a window of her home had been pried open and was "badly damaged." She also testified that an antique clock that was sitting near the damaged window had been "smashed."

Notably, Sutherly did not testify about the value of the stolen property. Although she described her stolen jewelry and listed the other items that were stolen from her house, she did not assign a value to any particular item. Sutherly, however, testified that she filed an insurance claim based on the items that were missing from her home. Sutherly testified that her insurance company paid her $3,200 based on her claim. The Commonwealth did not introduce any documents pertaining to Sutherly's insurance claim into evidence during Lamp's trial.

Shelly McDearman, an employee of a local jewelry store, testified that Lamp sold several pieces of women's jewelry at the store on August 13, 2016. A "Precious Metals and Jewels

---

[2] Morris also testified that she and her sister went into Sutherly's house through an unlocked door approximately one week after she broke into the house with Lamp. While Morris admitted that she and her sister took various items from the house, she explained that she returned these items to a police officer who was investigating the burglaries.

Record" associated with the sale was admitted into evidence. This document displayed a copy of Lamp's driver's license and indicated that he sold nineteen pieces of jewelry to the store for a total of $115. The document also included photographs of the jewelry purchased by the store. Sutherly identified three of the pieces of jewelry depicted in the photographs as items that were taken from her home.

At the conclusion of the Commonwealth's case-in-chief, Lamp moved to strike the evidence against him. Lamp argued that Morris's testimony was not credible. He also maintained that the evidence failed to prove that the value of the items taken from Sutherly's house was $200 or more. The circuit court denied Lamp's motion, noting that Sutherly's testimony corroborated Morris's description of the August 12, 2016 break-in and that Sutherly was paid $3,200 based on her insurance claim following the theft.

Lamp did not present any defense evidence and renewed his motion to strike. Again, Lamp argued that Morris was not a credible witness. While Lamp acknowledged that Sutherly received $3,200 for her insurance claim, he noted that the Commonwealth did not present any "breakdown" of the claim. The circuit court denied Lamp's renewed motion and convicted him of the charged offenses. This appeal followed.

## II. ANALYSIS

On appeal, Lamp challenges the sufficiency of the evidence supporting each of his convictions. Lamp contends that the circuit court erred by convicting him of statutory burglary in violation of Code § 18.2-91 based on the "inherently incredible" testimony of Morris. Lamp also contends that the evidence presented at his trial failed to establish that the value of the items stolen from Sutherly's house was $200 or more. Consequently, Lamp argues that the evidence was insufficient to support his convictions for violating Code §§ 18.2-95(ii) and 18.2-108.01(A).

- 4 -

When considering the sufficiency of the evidence on appeal, we "'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence to support it.'" White v. Commonwealth, 68 Va. App. 111, 118 (2017) (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257 (2003) (*en banc*)); see also Code § 8.01-680. "[U]nder this familiar standard of review, '[a]n appellate court does not ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Dalton v. Commonwealth, 64 Va. App. 512, 525 (2015) (quoting Williams v. Commonwealth, 278 Va. 190, 193 (2009)). "Rather, the relevant question is whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (quoting Williams, 278 Va. at 193). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Spence v. Commonwealth, 60 Va. App. 355, 367 (2012) (quoting Brown v. Commonwealth, 52 Va. App. 178, 185 (2010)).

Applying this standard, we conclude that the evidence presented at Lamp's trial supported his statutory burglary conviction. Morris's testimony was not inherently incredible, and it established each element of the statutory burglary offense. The evidence, however, did not establish that the items stolen from Sutherly's home had a value of $200 or more. Therefore, the evidence presented at Lamp's trial was insufficient to support his convictions for grand larceny and larceny of property with a value of $200 or more with the intent to sell or distribute.

A. THE EVIDENCE SUPPORTED LAMP'S STATUTORY BURGLARY CONVICTION

Code § 18.2-91 sets forth the elements of the statutory burglary offense at issue in this case. In pertinent part, Code § 18.2-91 states that "[i]f any person commits any of the acts mentioned in [Code] § 18.2-90 with intent to commit larceny, . . . he shall be guilty of statutory burglary." "Code § 18.2-90 includes the acts of either entering a dwelling house in the nighttime

or breaking and entering into a dwelling house in the daytime." Beck v. Commonwealth, 66 Va. App. 259, 264 (2016). "To establish a breaking for the purposes of burglary, the Commonwealth need only show 'the application of some force, slight though it may be, whereby the entrance is [achieved].'" Id. at 269 (quoting Finney v. Commonwealth, 277 Va. 83, 88 (2009)).

In the present case, Morris testified that she and Lamp broke into Sutherly's house on the evening of August 12, 2016, in order to steal Sutherly's property and sell it. Morris explained that Lamp "popped a window" in Sutherly's house and entered the house through it. Morris also testified that she and Lamp stole numerous items from Sutherly's home, including jewelry and antiques. On appeal, Lamp contends that the circuit court erred by determining that Morris's testimony was credible. We disagree with Lamp's argument.

"The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Smith v. Commonwealth, 56 Va. App. 711, 718 (2010) (quoting Sandoval v. Commonwealth, 20 Va. App. 133, 138 (1995)). "[T]he conclusions of the fact finder on issues of witness credibility may be disturbed on appeal only when we find that the witness' testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" Ragsdale v. Commonwealth, 38 Va. App. 421, 429 (2002) (quoting Ashby v. Commonwealth, 33 Va. App. 540, 548 (2000)). "[T]he testimony of a single witness, if found credible by the trial court and not found inherently incredible by this Court, is sufficient to support a conviction." McCary v. Commonwealth, 36 Va. App. 27, 41 (2001).

The circuit court heard Morris's testimony, observed her demeanor as she testified, and concluded that she was a credible witness. Upon review, we conclude that Morris's testimony was not inherently incredible or unbelievable. Morris provided a plausible description of the

August 12, 2016 break-in, and additional evidence presented at Lamp's trial corroborated key details of her testimony.

Sutherly corroborated several components of Morris's testimony. Morris testified that she and Lamp broke into Sutherly's home by "popping" a window, and Sutherly testified that a window of her home was damaged following the August break-in. Both Morris and Sutherly testified that jewelry was stolen from a jewelry box located in an upstairs room of Sutherly's house. They also both testified that a television and antique items were stolen from the home.[3]

Furthermore, Morris testified that Lamp told her that he intended to sell the items that they stole from Sutherly's house at "pawn shops or antique places." Consistent with Morris's testimony, Lamp sold three pieces of jewelry that were stolen from Sutherly's home on the day following the August 12, 2016 break-in. Lamp's possession of the recently stolen jewelry implied that he participated in the break-in that occurred at Sutherly's house on the previous evening. See Burton v. Commonwealth, 58 Va. App. 274, 284 (2011) ("[T]he unexplained possession of recently stolen goods permits an inference of larceny by the possessor[.]" (quoting Winston v. Commonwealth, 26 Va. App. 746, 757 (1998))).

We will not disturb the circuit court's credibility determination on appeal under these circumstances. As Morris's testimony was competent to prove that Lamp committed statutory burglary in violation of Code § 18.2-91, we affirm Lamp's statutory burglary conviction.

B. THE EVIDENCE DID NOT ESTABLISH THAT THE STOLEN ITEMS HAD A VALUE OF $200 OR MORE

Lamp also contends that the evidence presented at his trial was insufficient to support his convictions for violating Code §§ 18.2-95(ii) and 18.2-108.01(A). Specifically, Lamp maintains

---

[3] We acknowledge that Sutherly testified that additional items were stolen. Morris, however, testified that Lamp stayed in Sutherly's house after she left on the evening of August 12, 2016, thereby implying that Lamp may have stolen additional items when she was not present.

that the evidence failed to prove that the items stolen from Sutherly's house had a value of $200 or more.  Code § 18.2-95 defines the offense of grand larceny.  In pertinent part, the version of Code § 18.2-95 that was in effect when Lamp allegedly violated that statute stated that "[a]ny person who . . . commits simple larceny not from the person of another of goods and chattels of the value of $200 or more . . . shall be guilty of grand larceny."  Code § 18.2-95(ii) (1998).  Code § 18.2-108.01 addresses the offense of larceny with the intent to sell or distribute.  The version of Code § 18.2-108.01 that was in effect when Lamp allegedly violated that statute stated that "[a]ny person who commits larceny of property with a value of $200 or more with the intent to sell or distribute such property is guilty of a felony."  Code § 18.2-108.01(A) (2003).

The monetary amounts specified in Code §§ 18.2-95(ii) and 18.2-108.01(A) are "essential element[s]" of the offenses at issue.  Britt v. Commonwealth, 276 Va. 569, 574 (2008); see also Grimes v. Commonwealth, 62 Va. App. 470, 476 (2013), aff'd, 288 Va. 314 (2014).  Accordingly, the Commonwealth was required to prove beyond a reasonable doubt that the value of the allegedly stolen property met or exceeded the statutory threshold of $200 in order to obtain convictions under Code §§ 18.2-95(ii) and 18.2-108.01(A).  See Britt, 276 Va. at 574; Grimes, 62 Va. App. at 476.

The value of a stolen item is determined by its "current value" or "fair market value," Robinson v. Commonwealth, 258 Va. 3, 5-6 (1999), which "is measured as of the time of the theft," Parker v. Commonwealth, 254 Va. 118, 121 (1997).  "Fair market value is the price property will bring when offered for sale by a seller who desires but is not obliged to sell and bought by a buyer under no necessity of purchasing."  Robinson, 258 Va. at 5-6 (quoting Bd. of Supervisors v. Donatelli & Klein, Inc., 228 Va. 620, 628 (1985)).  "[W]here an item has no [f]air market value, [its] actual value must be shown."  Baylor v. Commonwealth, 55 Va. App. 82, 88 (2009) (quoting DiMaio v. Commonwealth, 46 Va. App. 755, 764 (2005)).

"The Commonwealth can establish value in a number of ways, including the testimony of a lay person as to the property's fair market value, the opinion of an expert, 'or by traditional accounting principles, starting with the original cost of the item and then factoring in depreciation or appreciation.'" Id. at 87-88 (quoting DiMaio, 46 Va. App. at 764). "The opinion testimony of the owner of the stolen item generally is competent and admissible on the issue of the value of that property." Parker, 254 Va. at 121. Furthermore, "the original purchase price of an item is admissible as evidence of its current value." Little v. Commonwealth, 59 Va. App. 725, 731 (2012) (quoting Robinson, 258 Va. at 6). However, "'there must also be due allowance for elements of depreciation,'" or "'a showing of the effect of age and wear and tear on the value of an item.'" Id. (quoting Dunn v. Commonwealth, 222 Va. 704, 705 (1981)).

Lamp contends that the Commonwealth presented insufficient evidence regarding the value of the items that Sutherly claimed were taken from her home. Although Lamp acknowledges that Sutherly testified that she received $3,200 based on the insurance claim she submitted following the break-in, Lamp emphasizes that Sutherly did not testify about the value of any of the stolen items. Lamp maintains that McDearman's testimony provided the only evidence pertaining to the value of the items stolen from Sutherly's home. As McDearman testified that Lamp sold items of stolen jewelry for only $115, Lamp contends that the evidence presented at his trial failed to establish that the value of the stolen items met or exceeded the applicable $200 statutory threshold. Under the circumstances of the present case, we agree with Lamp's argument.

While Sutherly described the jewelry and other items that were stolen from her home, she did not testify regarding the value of the stolen items. Sutherly did not testify about how much she paid for the items that were stolen or their value at the time of the theft. Although Sutherly

testified that she received $3,200 for her insurance claim based on the stolen property, she never testified that the stolen items had a fair market value of $3,200.

"It is axiomatic that some items appreciate in value with the passage of time just as other items depreciate." Baylor, 55 Va. App. at 89-90. Certain items, like jewelry, tend to hold their value over time. See Lester v. Commonwealth, 30 Va. App. 495, 505 (1999). In contrast, "[i]t is common knowledge that technical equipment generally depreciates in value over time and that equipment which does not operate properly has significantly reduced value." Id.

In the present case, both jewelry and electronic items were stolen from Sutherly's house. While the stolen jewelry may have maintained its value (or even appreciated), Sutherly did not testify regarding the purchase price of the stolen pieces of jewelry. She also did not testify about the purchase price or condition of the stolen electronic items. Without such testimony, the circuit court could not measure the depreciation or appreciation of the stolen property. Thus, the circuit court could not estimate its current value at the time of the theft.

Although Sutherly's insurance claim implied that the stolen items had some value, the Commonwealth did not provide any documents or additional testimony explaining the basis of the claim. No "claim of loss" or other document was admitted into evidence showing any of the values that Sutherly may have placed on the stolen items. Furthermore, no documents or testimony explained how Sutherly's insurance company assessed the claim or valued the stolen items.

In the absence of such evidence, the circuit court was required to speculate regarding the method of valuation underlying Sutherly's insurance claim. We note that Sutherly's insurance company may have failed to consider the depreciation of the stolen items, or it may have paid the claim based on the replacement values of the items at issue. When

> there is an absence of evidence linking replacement value to an
> accurate determination of actual or fair market value, mere

> evidence of replacement value alone is insufficient as a matter of law to support an inference by the fact finder that the value of stolen property necessarily exceeds the statutory threshold.

Baylor, 55 Va. App. at 90.

In summary, we conclude that the evidence presented at Lamp's trial failed to establish that the stolen items had a value of $200 or more. Accordingly, we reverse Lamp's grand larceny conviction based on his violation of Code § 18.2-95(ii) and his conviction of larceny of property with a value of $200 or more with the intent to sell or distribute based on his violation of Code § 18.2-108.01(A).

We also conclude, however, that the evidence presented at Lamp's trial satisfied the elements of the lesser-included offense of petit larceny. Although the evidence failed to prove that the value of the stolen items was $200 or more, McDearman's testimony established that three pieces of the stolen jewelry had some value. See Code § 18.2-96 (1992) ("Any person who . . . [c]ommits simple larceny not from the person of another of goods and chattels of the value of less than $200 . . . shall be deemed guilty of petit larceny . . . ."). Therefore, we remand this case to the circuit court for a new trial on the charge of petit larceny, if the Commonwealth be so advised. See, e.g., Britt, 276 Va. at 576.

### III. CONCLUSION

For the reasons stated, we affirm Lamp's statutory burglary conviction based on his violation of Code § 18.2-91. We reverse Lamp's grand larceny conviction based on his violation of Code § 18.2-95(ii) and his conviction of larceny of property with a value of $200 or more with the intent to sell or distribute based on his violation of Code § 18.2-108.01(A). We remand this

case to the circuit court for a new trial on the charge of petit larceny, should the Commonwealth be so advised.

Affirmed in part, reversed and remanded in part, and
reversed and dismissed in part.[4]

---

[4] We note that the circuit court sentenced Lamp to "five (5) years on each charge, to run concurrently," and then suspended "all but one (1) year and eleven (11) months of the five-year concurrent sentence for a period of five (5) years after [Lamp's] release from incarceration." The circuit court's sentencing order did not specify whether Lamp was sentenced to an active period of incarceration of one year and eleven months on each conviction, or whether his active sentence was apportioned among the convictions in a manner that resulted in an aggregate active period of incarceration totaling one year and eleven months.

On remand, we direct the circuit court to clarify the action taken regarding Lamp's suspended sentence pursuant to Code § 8.01-428(B). We note that the circuit court's authority is limited to correcting the record to reflect "'judicial action which has actually been taken . . . at the proper time,'" as opposed to action "[the court] might have [taken]" but did not. Davis v. Mullins, 251 Va. 141, 149-50 (1996) (quoting Council v. Commonwealth, 198 Va. 288, 292 (1956)).