COURT OF APPEALS OF VIRGINIA

Present:    Judges O'Brien, Russell and Senior Judge Clements
Argued at Richmond, Virginia

SIDI O. JIDDOU

                                                    OPINION BY
v.       Record No. 1910-18-2          JUDGE JEAN HARRISON CLEMENTS
                                                    DECEMBER 27, 2019

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
David E. Johnson, Judge

David G. Boyce (Cullen D. Seltzer; Sean M. Hutson; Sands
Anderson PC, on briefs), for appellant.

Rosemary V. Bourne, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


In a jury trial, Sidi O. Jiddou (appellant) was convicted for two counts of fraudulently

purchasing cigarettes in violation of Code § 58.1-1017.3, three counts of possessing with the

intent to distribute tax-paid, contraband cigarettes in violation of Code § 58.1-1017.1, and two

counts of money laundering in violation of Code § 18.2-246.3.  On appeal, appellant argues that

1) the trial court erred in refusing to find, as a matter of law, that appellant's conduct on February

13, 16, and 22, 2017, did not violate either Code § 58.1-1017.3 or Code § 58.1-1017.1; 2) the

evidence was insufficient to sustain his convictions; 3) the trial court improperly permitted the

Commonwealth to elect a jury trial; and 4) the trial court erred in admitting prejudicial evidence.

Finding no error, we affirm appellant's convictions.

## FACTS

"In general, when reviewing a challenge to the sufficiency of the evidence to support a

conviction, an appellate court considers the evidence in the light most favorable to the

Commonwealth, the prevailing party below, and reverses the judgment of the trial court only when its decision is plainly wrong or without evidence to support it." Marshall v. Commonwealth, 69 Va. App. 648, 652-53 (2019). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" Chavez v. Commonwealth, 69 Va. App. 149, 161 (2018) (quoting Banks v. Commonwealth, 67 Va. App. 273, 288 (2017)). "In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." Gerald v. Commonwealth, 295 Va. 469, 472 (2018) (quoting Scott v. Commonwealth, 292 Va. 380, 381 (2016)). Moreover, "[o]n appellate review of issues involving the admissibility of evidence, the Court views the evidence in the light most favorable to the Commonwealth as the party who prevailed below." Haas v. Commonwealth, 71 Va. App. 1, 5 n.1 (2019).

Individuals engaged in illegal cigarette trafficking in Virginia are known to take advantage of the available sales tax exemption for retail businesses, and to purchase large quantities of cigarettes from wholesale outlets and "big-box" stores, such as Sam's Club or Costco. Even though they do not actually represent operating retail businesses, cigarette traffickers nonetheless present apparently legitimate documentation of entitlement to the sales tax exemption when they purchase cigarettes at wholesale, then resell those cigarettes for profit in states where the price of cigarettes and the sales tax are much higher than in Virginia.[1]

---

[1] We note that, effective January 1, 2018, Virginia adopted more stringent standards pertaining to the purchase of cigarettes and that a "taxpayer" seeking to buy cigarettes without paying sales tax now must obtain and present a "cigarette exemption certificate." Code § 58.1-623.2.

Background Relating to Cigarette Express

On June 16, 2015, appellant applied for a business membership at a Sam's Club for the business "Cigarette Express Number 1." In connection with the application, appellant completed and signed a standardized ST-10 form from the Virginia Department of Taxation (the Department) stating that Cigarette Express was exempt from paying sales tax for the purchase of items resold through that retail business. The ST-10, signed by appellant as the owner of Cigarette Express, stated that the certificate of exemption "shall remain in effect until revoked in writing by the Department of Taxation." To obtain the Sam's Club business membership, appellant also was required to provide proof of the business' existence with a "Certificate of Registration for the Collection of Virginia Sales and Use Tax," the standardized ST-4 form issued by the Department. Accordingly, with the Sam's Club membership application, appellant submitted a ST-4 form issued to Cigarette Express at 9905 Hull Street Road. As directed to the holder of the certificate, the ST-4 advised, "If you cease to conduct business at this place of business, the certificate immediately expires. You must notify the Department of Taxation . . . in writing within 30 days and return this Certificate of Registration." On the ST-10 that appellant submitted to Sam's Club, he was required to provide the registration number for Cigarette Express issued by the Department on the ST-4. Upon this documentation, Sam's Club issued a business membership to Cigarette Express, with appellant listed as the contact. The business membership thus permitted appellant to purchase qualifying products at Sam's Club without paying sales tax.

The commissioner of revenue for Chesterfield County issued a business license to Cigarette Express at the location of 9905 Hull Street Road in 2015. The license was valid until the end of 2015, but was not renewed in 2016. In fact, appellant sold Cigarette Express to

another person, Shao Wu, before the end of 2015.[2]  A second entity, Good Time LLC, was issued a business license at 9905 Hull Street Road in 2015, and that license expired at the end of 2016.

<u>Investigation of Appellant's Cigarette Purchases at Sam's Club in February 2017</u>

Beginning in 2012, Detective Rich Regan of the Chesterfield County police investigated illegal cigarette trafficking in Virginia, and he has made more than 200 arrests for that enterprise. In Regan's experience, cigarette trafficking in Virginia results in the loss of sales tax revenue to the state, as well as an increased rate in many types of crime.  During his investigations, Regan often conducts undercover surveillance outside stores like Sam's Club or Costco to watch for potential traffickers buying large quantities of cigarettes, but purchasing nothing else that typically would be sold in a legitimate retail business.

On February 13, 2017, while stationed in the parking lot of a Chesterfield County Sam's Club, Regan saw appellant exit the store with a man named Abaydee, who had a prior conviction for cigarette trafficking.  Appellant was pushing a cart with what Regan later determined to be 240 cartons of cigarettes.[3]  Appellant and Abaydee noticed Regan sitting in his vehicle, pointed at him, and walked to appellant's car.  Regan saw appellant and Abaydee load the cigarettes into the back of the car, and appellant drove away.  Abaydee returned to the store.  He later exited the store with Hassan Akim, who had purchased about 200 cartons of cigarettes.

Regan entered the store and obtained a sales receipt indicating that appellant's business membership to Sam's Club had been used that day to purchase 240 cartons of Newport

---

[2] After appellant's arrest in February of 2017 for the charged offenses, appellant admitted to the police that he knew the business license for Cigarette Express had expired and that he had sold the business in September of 2015.

[3] Each carton of cigarettes contains ten packs.  There are twenty cigarettes in each pack.

cigarettes.[4]  Videotape from the store's surveillance camera showed appellant making the purchase.

The Sam's Club purchase history for the Cigarette Express business membership reflected a cash purchase, using appellant's membership card, of 220 cartons of two types of Newport cigarettes on February 16, 2017.  Appellant was the holder of the only active membership card for the account.  In addition, the purchase history for the Cigarette Express account showed a cash purchase, using appellant's Sam's Club membership card, of 220 cartons of various brands of cigarettes on February 22, 2017.

Luis Basco, a compliance manager at the Sam's Club store, testified that, to obtain a business membership to purchase items without sales tax, as appellant did in 2015, an applicant must complete a ST-10 form and provide proof of the business' existence.  With a business membership in hand, the member may then purchase certain products without paying state sales tax.  At the time of a purchase, a Sam's Club member is required to produce a membership card bearing his or her photograph.  The cashier verifies that the photograph on the card matches the purchaser before completing the transaction.  Basco stated that Sam's Club keeps its cigarette inventory in a "tobacco cage," which has a separate point of sale from the other cash registers.  At the tobacco cage, a cashier fills a customer's request for cigarettes, follows the normal procedure to verify the customer's identity with his membership card, and processes the sale.

Sam's Club sells cigarettes only by whole sealed cartons, not individual packs.  As a general practice, cigarettes are sold by the manufacturer to a stamping agent, which applies the required Virginia tax stamp to cigarette packs before they are sold to wholesale outlets in Virginia.  Basco testified that, within the sealed cartons, all cigarette packs bear the Virginia tax stamp, which is applied before the product reaches Sam's Club.

---

[4] The amount of the cash sale on February 13, 2017, was $12,182.40.

Candace Banks, a senior tobacco analyst with the Department of Taxation, testified that Virginia law requires a retail business to register with the Department and obtain a ST-4 registration to post at its location. Only after obtaining a ST-4 certificate of registration may a business lawfully complete a ST-10 form, the certificate of exemption from sales tax. Banks testified that a ST-4 certificate becomes invalid immediately, just as it states, if the business closes. Banks further testified that for a business' ST-10 form to remain valid, the business must have a valid ST-4 certificate as a prerequisite. Banks also stated that a ST-10 form may be rendered invalid, other than by the business closing, through revocation by the Department.

Cigarette Express never filed any of the required documents with the Department regarding the collection of sales taxes from retail sales. Following an audit that was prompted by appellant's arrest, the Department notified appellant in writing on or about March 2, 2017, that the ST-10 for Cigarette Express was invalid. Banks testified that, notwithstanding the written notice in March of 2017, the ST-10 for Cigarette Express became invalid with the lapse of the business' ST-4 registration.

Testifying as an expert in the field of cigarette trafficking, Detective Michael Wyatt stated that proceeds from cigarette trafficking were used to support terrorist organizations and drug cartels in foreign countries. He opined that appellant's use of cash to purchase the amount of cigarettes he bought in February 2017 was inconsistent with possession of cigarettes for personal use or in connection with a legitimate retail business. Consistent with Banks's testimony, Wyatt stated that a ST-10 form expires immediately when the business closes and that any tax-free purchase upon the expired ST-10 form would be invalid. Wyatt also testified that, because Sam's Club receives its cigarettes from McLane, a licensed cigarette stamper for Virginia, the store's inventory of cigarettes would not have contained unstamped cigarettes.

ANALYSIS

I.

The jury convicted appellant for fraudulently purchasing cigarettes on February 13 and 16, 2017, in violation of Code § 58.1-1017.3. Under Code § 58.1-1017.3, "[a]ny person who purchases more than 5,000 (25 cartons) cigarettes using a . . . forged or invalid Virginia sales and use tax exemption certificate . . . is guilty of a Class 6 felony for a first offense and a Class 5 felony for a second or subsequent offense."[5] Appellant argues that, as a matter of law, his purchases of cigarettes on February 13 and 16, 2017, did not violate Code § 58.1-1017.3 because the ST-10 for Cigarette Express had not yet been revoked in writing by the Department.[6]

A "question of law" is defined as "[a]n issue to be decided by the judge, concerning the application or interpretation of the law[,]" and "[a] question that the law itself has authoritatively answered, so that the court may not answer it as a matter of discretion[.]" Question of Law, Black's Law Dictionary (11th ed. 2019). By contrast, a "question of fact" is "[a]n issue that has not been predetermined and authoritatively answered by the law[.]" Question of Fact, Black's, supra. No Virginia statute or regulation defines what constitutes an "invalid" tax exemption certificate for purposes of Code § 58.1-1017.3. Therefore, the issue before us does not involve a pure question of law, but rather an application of law to the facts of the case. Accordingly, on

---

[5] Effective January 1, 2018, the General Assembly amended Code § 58.1-1017.3 to prohibit the purchase of cigarettes using a "forged or invalid Virginia cigarette exemption certificate," as set forth in Code § 58.1-1017.4.

[6] On brief, appellant also asserts this argument in challenging his three convictions under Code § 58.1-1017.1, which provides that "[a]ny person who possesses, with intent to distribute, 40,000 (200 cartons) or more tax-paid cigarettes is guilty of a Class 6 felony for a first offense and is guilty of a Class 5 felony for a second or subsequent offense." A conviction under Code § 58.1-1017.1 prohibits the mere possession of a quantity of tax-paid cigarettes with the intent to distribute, not the acquisition of them pursuant to an invalid ST-10 exemption form. At oral argument, however, appellant conceded that the validity of the ST-10 is the dispositive issue in the case.

- 7 -

appeal, we must determine whether "*any* rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

Appellant asserts that his ST-10 form for Cigarette Express remained valid because the standardized form itself states that it "shall remain in effect until revoked in writing by the Department of Taxation." It is undisputed that at the time of the February 13 and 16, 2017 cigarette purchases, the ST-10 had not been revoked in writing by the Department.

Appellant relies upon a section of the Virginia Administrative Code addressing certificates of sales tax exemption and stating:

> All sales, leases and rentals of tangible personal property are subject to the tax until the contrary is established. The burden of proving that the tax does not apply rests with the dealer unless he takes, in good faith from the purchaser or lessee, a certificate of exemption indicating that the property is exempt under the law. The certificate will remain in effect except upon notice from the Department of Taxation that it is no longer acceptable. *However, a certificate that is incomplete, invalid, infirm or inconsistent on its face is never acceptable, either before or after notice.*

23 VAC 10-210-280 (emphasis added). See also Code § 58.1-623(A). According to this regulation, the entity that accepts the ST-10, in this case Sam's Club, is entitled to rely on the form's validity until the Department issues notice that the certificate is no longer acceptable. Nonetheless, the last sentence of the regulation explicitly acknowledges that a certificate of exemption may be invalid even without written notice from the Department.

Under Virginia law, the validity of the certificate of registration, the ST-4, and the certificate of exemption, the ST-10, are linked. Code § 58.1-613, which governs the issuance of a certificate of registration by the Department, provides that "[e]very person desiring to engage in or conduct business as a dealer in this Commonwealth shall file with the Tax Commissioner or the local commissioner of the revenue . . . an application for a certificate of registration for each

place of business in this Commonwealth." Code § 58.1-613(A). Any resulting certificate of registration "shall be at all times conspicuously displayed at the place for which issued." Code § 58.1-613(C). The certificate of registration bears an identification number that must be included on the ST-10, which a business completes to enable it to make purchases that are exempt from sales tax.

When appellant applied for the business membership at Sam's Club, he placed the registration number issued by the Department for Cigarette Express in the ST-4 on the ST-10 form. Thus, appellant had notice that the validity of the ST-10 was linked to the validity of the ST-4.

Furthermore, under Code § 58.1-613(F),

> [i]f the holder of a certificate of registration ceases to conduct his business at the place specified in his certificate, *the certificate shall thereupon expire*, and such holder shall inform the Tax Commissioner in writing within 30 days after he has ceased to conduct such business at such place that he has so ceased.

(Emphasis added). By operation of this provision, the certificate of registration for Cigarette Express expired when appellant sold the business in 2015 and ceased operations. Nonetheless, appellant never advised the Department that he had sold Cigarette Express. Nor did appellant comply with the Virginia Administrative Code regulation requiring a dealer who sells his business to return the certificate of registration to the Department. See 23 VAC 10-210-3090(A).

Viewed in the light most favorable to the Commonwealth, the evidence supported the jury's conclusion that written revocation by the Department was not the only means by which a ST-10 may be rendered invalid. Banks and Wyatt testified that a business' possession of a valid ST-4 is required for a ST-10 for that same business to be valid and that a business' ST-4 is rendered invalid immediately when the business ceases operation. The ST-4 appellant provided to Sam's Club to obtain his membership specifically advised him of that fact.

The uncontroverted evidence proved that Cigarette Express had no business license and was not an operating business in February 2017. In fact, appellant sold Cigarette Express, and the business license lapsed, at the end of 2015. Appellant did not notify the Department that the business had ceased operating, did not return the ST-4 to the Department as required, and did not file a return for sales taxes collected through the business for sales of cigarettes or anything else. Nonetheless, in February of 2017 appellant purchased quantities of cigarettes from Sam's Club using a membership for a business that no longer existed, and, in doing so, relied upon the ST-10 filed in 2015 to avoid sales tax upon the purchases. At that time, however, the ST-4 for Cigarette Express was invalid and, consequently, the ST-10 was invalid also.

Prompted by appellant's arrest for the offenses, the Department conducted an audit and issued written notice in March of 2017 that the ST-10 for Cigarette Express was invalid. Notwithstanding the written notice, as Banks testified, the ST-10 already had been rendered invalid when the ST-4 expired. Thus, upon this evidence, a reasonable finder of fact could conclude beyond a reasonable doubt that in February of 2017 appellant used an invalid Virginia sales tax exemption certificate to purchase cigarettes.

II.

Appellant asserts several arguments challenging the sufficiency of the evidence to support elements of the offenses for which he was convicted.[7]

---

[7] In his reply brief, appellant argues for the first time that Code § 58.1-1017.1 is unconstitutionally void for vagueness relating to the placement of the required cigarette tax stamp. The petition for appeal did not raise this issue as an assignment of error. "Only assignments of error assigned in the petition for appeal will be noticed by this Court." Rule 5A:12(c)(1)(i). Accordingly, applying the requirements of Rules 5A:12(c)(1)(i) and 5A:20(c), appellant waived this issue, and we do not consider it. Simmons v. Commonwealth, 63 Va. App. 69, 75 n.4 (2014).

Appellant contends that the receipt and purchase history pertaining to the Cigarette Express account at Sam's Club identified the items purchased by brand, such as Newport and Marlboro, but not specifically as "cigarettes." Thus, appellant contends, the evidence did not prove that the items he purchased actually were cigarettes.

Regan testified without objection that he observed appellant leaving the store on February 13, 2017, with 240 cases of "cigarettes." Regan identified Newport as a brand of cigarette, and said that there were other brands of cigarette as well. The receipt for the February 13, 2017 incident showed that appellant bought "Newports." The Sam's Club purchase history for February 13, 16, and 22, 2017, showed the purchase of "Newports" and "Marlboros." Upon this evidence, the jury could have concluded beyond a reasonable doubt that appellant purchased and possessed actual cigarettes on February 13, 16, and 22, 2017.

Possession of Tax-stamped Cigarettes

Appellant maintains that the evidence did not demonstrate that any cigarettes he possessed had been tax-stamped, as required by Code § 58.1-1017.1.[8] The Commonwealth proved, however, that the cigarette purchases were made from Sam's Club, which sold only sealed cartons of packages of cigarettes. The store received its cigarette inventory directly from a licensed cigarette stamper for Virginia. Thus, unstamped packages of cigarettes would not

---

[8] Appellant also argues that Code § 58.1-1017.1 prohibits the possession of individual cigarettes, not packages, which bear a Virginia tax stamp. Appellant did not raise this issue in the trial court. "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Rule 5A:18. "The purpose of this contemporaneous objection requirement is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." Creamer v. Commonwealth, 64 Va. App. 185, 195 (2015). Appellant does not invoke the good cause or ends of justice exceptions to Rule 5A:18 as to this issue, and the Court will not apply the exceptions *sua sponte*. Edwards v. Commonwealth, 41 Va. App. 752, 761 (2003) (*en banc*). Accordingly, Rule 5A:18 bars our consideration of this aspect of appellant's argument on appeal.

have been for sale at Sam's Club. No evidence tended to show that un-stamped packages of cigarettes had somehow infiltrated the inventory at Sam's Club. "For a hypothesis of innocence to be reasonable, it must flow from the evidence actually presented; it cannot spring forth from the imagination of an appellant or his counsel." Butcher v. Commonwealth, 69 Va. App. 406, 420 (2018). Therefore, we reject this argument.

<u>Purchase and Possession of Cigarettes</u>

Appellant argues that the evidence did not prove beyond a reasonable doubt that on February 13, 16, and 22, 2017, he purchased, and thus possessed, cigarettes in violation of Code § 58.1-1017.1. and Code § 58.1-1017.3. Appellant argues that the only evidence of his purchases of cigarettes at Sam's Club on February 16 and 22, 2017, was the purchase history for the Cigarette Express account, which was introduced into evidence without objection.

Regan testified that he saw appellant leaving the store on February 13, 2017, with 240 cases of "cigarettes." The store's security camera recorded video of appellant making the purchase, and the Commonwealth introduced the receipt. In addition, in conjunction with the other evidence, the purchase history proved that on February 16 and 22, 2017, appellant's membership card for Cigarette Express was used to purchase 220 cartons of cigarettes on both dates. As a carton contains 200 cigarettes, the Commonwealth proved the purchase of more than 40,000 cigarettes on each occasion. Appellant was the only person with an active membership card for the Cigarette Express account. Considering this fact with the testimony that Sam's Club employees verified the identity of the purchaser as the club member presenting his or her card, the jury reasonably could conclude that appellant was the purchaser on all the occasions, even without video evidence of the transactions. Contrary to appellant's assertion on appeal, the jury's determination of guilt was based upon evidence, not speculation, and it was the function of

the jury to determine the weight of the evidence presented at trial. <u>Bloom v. Commonwealth</u>, 262 Va. 814, 821 (2001).

<u>Possession of Cigarettes with the Intent to Distribute</u>

Challenging his convictions under Code § 58.1-1017.1, appellant argues that the Commonwealth failed to prove that he possessed cigarettes with the intent to distribute them. The Commonwealth proved, however, that appellant purchased, with cash, more than 40,000 cigarettes on three separate occasions within a short period of time. Testifying as an expert on cigarette trafficking, Wyatt stated that the purchase of such quantities with cash was inconsistent with possession of cigarettes for personal use or in connection with a legitimate business. Appellant submitted no documentation to the Department indicating the collection of sales taxes in connection with cigarette sales. Upon the Commonwealth's evidence, a reasonable finder of fact could conclude beyond a reasonable doubt that appellant had the intent to distribute the cigarettes he purchased and that he was guilty of three counts of violating Code § 58.1-1017.1.

<u>Money Laundering</u>

Appellant also was convicted for committing money laundering in violation of Code § 18.2-246.3 on February 16 and 22, 2017. A conviction under Code § 18.2-246.3 requires that a defendant "knowingly . . . conduct a financial transaction where [he] knows the property involved in the transaction represents the proceeds of an activity which is punishable as a felony" under Virginia law. Appellant challenges his convictions for money laundering under this statute, arguing that the evidence was insufficient to prove an underlying felony conviction of Code § 58.1-1017.1 or Code § 58.1-1017.3. However, because the evidence was sufficient to sustain appellant's convictions under those two statutes, as noted above, we need not further consider this argument.

- 13 -

Appellant argues that the trial court erred in ordering a jury trial upon the Commonwealth's request. Initially, the matter was set for a bench trial on September 5, 2017, on the joint motion of the parties. Upon the Commonwealth's motion and with appellant's agreement, the bench trial was continued to October 10, 2017, because a witness was unavailable. On October 10, 2017, the Commonwealth requested a trial by jury. Although appellant conceded that he had been alerted that the Commonwealth might request a jury trial, he asserted that the Commonwealth had waived its right to request a jury trial. The Commonwealth argued that no prior order reflected a waiver of the right to a jury trial. The trial court agreed that there had been no such waiver, granted the Commonwealth's motion, and set the matter for a jury trial.

"[I]n criminal prosecutions . . . [the accused] shall enjoy the right to a speedy and public trial, by an impartial jury of his vicinage . . . ." Va. Const. art. 1, § 8. "If the accused plead not guilty, he may, with his consent and the concurrence of the attorney for the Commonwealth and of the court entered of record, . . . waive a jury." Id.; see also Code § 19.2-257; Rule 3A:13(b).

> Under the scheme mandated by our constitution and augmented by statute and the Rules of the Supreme Court, circuit courts must assume that trial will be by jury unless and until the accused knowingly and intelligently waives that right and the attorney for the Commonwealth and the trial court concur in the decision to forego a jury trial.

Wright v. Commonwealth, 4 Va. App. 303, 309 (1987).

Nonetheless, a defendant has no constitutional right to a bench trial. O'Dell v. Commonwealth, 234 Va. 672, 689 (1988). While "the accused does have a constitutional right to a jury trial, . . . the Virginia Constitution gives the Commonwealth 'an equal voice' in determining whether the case will be heard by a jury[.]" King v. Commonwealth, 40 Va. App.

364, 374 (2003) (citing O'Dell, 234 Va. at 689).  "Thus, if the accused does not demand trial by jury, the Commonwealth nevertheless may choose a jury trial."  Id.

In this case, the matter initially was set for a bench trial, but neither party indicated that it was waiving the right to a jury.  Nor was there any indication that the trial court concurred in a waiver of a jury trial.  Under Virginia law, there is no time limitation within which the Commonwealth must exercise its right to choose a jury trial.  See id.  Accordingly, we conclude that the trial court did not err in granting the Commonwealth's motion and in holding a jury trial upon the Commonwealth's request.

IV.

Appellant argues that the trial court erred in admitting evidence relating to his nationality and religion, and testimony that tended to connect cigarette trafficking and terrorism.

In discussing his qualifications and background in cigarette trafficking, Wyatt testified that cigarette trafficking is "not only a tax issue," but that it "funnels money overseas to terrorist units like Hamas, Muslim Brotherhood, and stuff like that."  Wyatt explained how money from the illegal cigarette trade travels from banks to Lebanon, parts of the Middle East, Hamas, and Al Qaeda, and "some of it is funneled back into Mexican drug cartels."  On cross-examination, appellant asked if Wyatt was familiar with Mauritania, appellant's country of origin.  Wyatt admitted that he was.  In response to a question on redirect, Wyatt said that he had had contact with Mauritanians who were buying five cartons of cigarettes at a time for resale, a practice known as "smurfing."

Appellant argues that the Commonwealth improperly introduced evidence regarding his national origin, indicated racial bias against him, and implied that he was associated with terrorist organizations.  During his trial, appellant did not raise any objections to this evidence.

"[A]n objection to the admissibility of evidence must be made when the evidence is presented. The objection comes too late if the objecting party remains silent during its presentation and brings the matter to the court's attention by a motion to strike made after the opposing party has rested." Wells v. Commonwealth, 65 Va. App. 722, 729 (2016) (quoting Kondaurov v. Kerdasha, 271 Va. 646, 655 (2006)). "[P]ost-trial motions regarding admission of evidence generally are not timely, especially after the jury has reached a verdict and been excused." Jones v. Commonwealth, 50 Va. App. 437, 445 (2007). If a party fails to timely and specifically object, he waives his argument on appeal. Arrington v. Commonwealth, 53 Va. App. 635, 641 (2009).

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Rule 5A:18. Appellant argues that this Court should invoke the ends of justice exception to Rule 5A:18 in this instance. "We apply the ends of justice exception to Rule [5A:18] in limited circumstances. Applying the exception is appropriate when there is error as contended by the appellant and when the failure to apply the exception would result in a grave injustice." Hicks v. Director, Dep't of Corr., 289 Va. 288, 296 (2015) (citations omitted). "In order to avail oneself of the exception, a defendant must affirmatively show that a miscarriage of justice has occurred . . . ." Redman v. Commonwealth, 25 Va. App. 215, 221 (1997). To demonstrate a miscarriage of justice, appellant "must show that either the conduct for which he was convicted is not a criminal offense or that the record affirmatively establishes that an element of the offense did not occur." Le v. Commonwealth, 65 Va. App. 66, 74 (2015).

As noted above, the evidence proved that appellant's conduct violated three Virginia statutes and that the Commonwealth proved all the elements of the offenses beyond a reasonable

doubt. Wyatt's testimony related simply to the worldwide impact of cigarette trafficking in general. The Commonwealth elicited no evidence relating to appellant's or his wife's religion. Indeed, appellant, through his cross-examination of Wyatt, opened the door to further testimony regarding appellant's country of origin. Under these circumstances, this is not one of the rare instances where we invoke the ends of justice exception and consider the issue raised by appellant on appeal. See Lacey v. Commonwealth, 54 Va. App. 32, 46 (2009).

CONCLUSION

For the foregoing reasons, we affirm appellant's convictions.

Affirmed.